In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00208-CR

                                                ______________________________

 

 

                                    JOHN WESLEY WALSH,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 115th
Judicial District Court

                                                            Upshur County, Texas

                                                            Trial
Court No. 14,971

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

 

            A
jury assessed life imprisonment for John Wesley Walsh after convicting him of
burglary of Stan Burks’ residence, enhanced by prior convictions of murder and
burglary of a building.  Walsh appeals
the trial court’s judgment on the grounds that insufficient evidence supported
his conviction, his counsel rendered ineffective assistance, and the trial
court erred in allowing the jury to assess punishment.  In affirming the trial court’s judgment, we
find the evidence sufficient, conclude counsel was not ineffective, and find no
reversible error with respect to jury assessment of Walsh’s punishment.  

I.         Sufficient Evidence
Supported Walsh’s Conviction 

            Burks’
son returned home from school to find “broken glass on the floor” from windows
in the kitchen, back door, and dining room. 
He called his mother and waited outside of the residence for police to
arrive.  An inventory of missing items
included missing knives, firearms, jewelry, a driver’s license, social security
card, debit card, other personal items, and cash taken from three
bedrooms.  

            By
the broken and jagged-edged kitchen window, officers noticed three drops of “blood
which was located on the frame inside the residence.”  The blood was sent to a DNA laboratory, and
was matched to Walsh’s profile contained in the Combined DNA Index System
(CODIS), a national database that stores known DNA profiles to generate leads
in unsolved cases.  Based on the laboratory
report, officers secured a warrant allowing them to obtain a buccal swab from
Walsh.  The laboratory compared the DNA
from the blood and cheek samples and confirmed Walsh was the contributor of the
blood obtained from Burks’ residence.  

            Walsh
contends this evidence was insufficient to establish he committed burglary of a
habitation.  We disagree.  

            We
will review the legal and factual sufficiency of the evidence supporting Walsh’s
conviction under well-established standards. 
In conducting a legal sufficiency review, we consider the evidence in
the light most favorable to the verdict to determine whether any rational jury
could have found the essential elements of burglary of a habitation beyond a
reasonable doubt.  Sanders v. State, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003).  We defer to the jury’s responsibility “to
fairly resolve conflicts in testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.”  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307,
318–19 (1979)).  We are not required to
determine whether we believe that the evidence at trial established guilt
beyond a reasonable doubt; rather, when faced with conflicting evidence, we
presume that the jury resolved any such conflict in favor of the prosecution,
and we defer to that resolution.  State v. Turro, 867 S.W.2d 43, 47 (Tex.
Crim. App. 1993).  

            In
conducting a factual sufficiency review, we consider the evidence in a neutral
light.  Watson v. State, 204 S.W.3d 404, 414–15 (Tex. Crim. App.
2006).  The verdict will be set aside
only if (1) it is so contrary to the overwhelming weight of the evidence as to
be clearly wrong and manifestly unjust, or (2) it is against the great weight
and preponderance of the evidence.  Id. at 415 (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)).  Both legal and factual sufficiency are
measured by the elements of the offense as defined by a hypothetically correct
jury charge.  Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); see also Grotti v. State, 273 S.W.3d
273, 280 (Tex. Crim. App. 2008).   

            Walsh
was charged by indictment with burglary of a habitation; the specific charge
was  that with intent to commit theft he
entered a habitation, without the effective consent of the owner, Burks.  Burglary may be committed by three different
means under the Texas Penal Code.  DeVaughn v. State, 749 S.W.2d 62, 64–65 (Tex. Crim. App. 1988).  Here, Walsh was charged with violating the
first alternative means as set out in the statute.  Tex.
Penal Code Ann. § 30.02(a)(1) (Vernon 2003).  When the State alleges one of several
alternative manner or means of committing the crime, that alternative must be
proved by the State and our review under the hypothetically correct jury charge
must be guided by the requirements of the alleged statutory alternative.  See Fuller v. State, 73 S.W.3d 250, 255
(Tex. Crim. App. 2002) (Keller, P.J., concurring); Mantooth v. State, 269 S.W.3d 68, 74 (Tex. App.—Texarkana 2008, no
pet.).  Here, a hypothetically correct
charge would require the jury to find, beyond a reasonable doubt, that:  (1) Walsh; (2) without effective consent
of the owner; (3) entered a habitation; (4) with intent to commit theft.  Tex.
Penal Code Ann. § 30.02(a)(1). 
“Theft” is the unlawful appropriation of property with intent to deprive
the owner of the property.  Tex. Penal Code Ann. § 31.03(a)
(Vernon Supp. 2009).  A person acts with
intent “with respect to the nature of his conduct . . . when it is his conscious
objective or desire to engage in the conduct . . . .”  Tex.
Penal Code Ann. § 6.03(a) (Vernon 2003). 
In a burglary prosecution, the specific intent to commit theft may be
inferred from the circumstances.  Hawkins v. State, 467 S.W.2d 465, 466
(Tex. Crim. App. 1971).

            The
evidence shows that the Burks home was forcibly entered and their property was
taken.  It is undisputed that Walsh’s
blood was found inside Burks’ residence next to the broken kitchen window.[1]  None of the Burks family knew Walsh and had
never seen him before.  Because there was
no occasion for Walsh’s presence inside of the home, it was reasonable for the
jury to infer that the blood must have been left during the burglary.[2]  The presence of three broken windows in the
back of the home indicated a knowing or intentional intrusion into the
residence.  Since the Burks family did
not know Walsh, he could not have obtained their consent for entry.  The inventory of stolen items established
that appropriation of the Burks property occurred.  Intent to deprive the Burks of their property
could have been inferred by the jury given these circumstances.  Officer James Norred pointed out to the jury
that the broken windows were all in “the back which would mean that whoever had
burglarized the home, they were trying to hide.”  Considering the evidence in the light most
favorable to the verdict, we conclude that a rational jury could have found the
essential elements of burglary of a habitation beyond a reasonable doubt.  

            The
only contrary evidence Walsh sought to introduce was an allegation that another
person by the name of Clifford Edward Pruitt may have burglarized the home.  Pruitt testified that he did not know Walsh
prior to their meeting in jail and that he had never seen the Burks
residence.  Affording the jury the
deference it is due, we cannot conclude its verdict was so contrary to the
overwhelming weight of the evidence as to be clearly wrong, manifestly unjust,
or against the great weight and preponderance of the evidence.   

            We
find that legally and factually sufficient evidence supported the jury’s
verdict and overrule Walsh’s first point of error. 

II.        Walsh Did Not Receive
Ineffective Assistance of Counsel 

            The
right to counsel does not mean the right to errorless counsel.  Robertson
v. State, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).  In order to prevail on a claim of ineffective
assistance of counsel, Walsh must satisfy the two-pronged test set forth in Strickland v. Washington.  466 U.S. 668, 687–88 (1984); see also Ex parte Imoudu, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009).  The Strickland
test “requires a case-by-case examination of the evidence.”  Williams
v. Taylor, 529 U.S. 362, 391 (2000).  The first prong requires a showing that
counsel’s performance fell below an objective standard of reasonableness.  Strickland,
466 U.S. at 687.  This requirement can be
difficult to meet since there is “a strong presumption that counsel’s conduct
falls within the wide range of reasonable professional assistance.”  Id.
at 689.  

            The
second Strickland prejudice prong
requires a showing that but for counsel’s unprofessional error, there is a
reasonable probability that the result of the proceeding would have been
different.  Strickland, 466 U.S. at 687–88; see
also Imoudu, 284 S.W.3d at
869.  “Reasonable probability” means a “probability
sufficient to undermine confidence in the outcome.”  Strickland,
466 U.S. at 694.  A failure to make a showing under either
prong defeats a claim for ineffective assistance.  Rylander
v. State, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).  

            In
an Anders[3]-style
briefing format, Walsh raises several issues relating to this point of error
and then proceeds to explain why they have no merit.  For completeness, the brief states:

            1.         He was initially brought into the
courtroom, handcuffed and shackled in the presence of the jury panel.  His lawyer failed to object.  There is no record of this even though
apparently the Trial Court quickly corrected this situation. . . .

 

            2.         He was not allowed to help select the
jury and has no idea when the jury was selected.  The record reflects that Walsh was present
during the jury voir dire. 

 

            3.         Walsh contends that he did not sign the
judgment of conviction . . . .  This
claim is groundless. 

 

            4.         Walsh contends the docket sheet was
altered.  This is ministerial concerning
the case number and the Trial Court’s motion. 
It has nothing to do with any misconduct and does not give rise to any
error at trial. 

 

            5.         Although Walsh contends [that] he had
no opportunity to participate in the jury selection, the Reporter’s Record
reflects his presence during voir dire and he complains that the jury panel
list sheet had the wrong cause number on it. 
His attorney did not object. 
These issues were cured along with Defendant’s motions being incorporated
into the correct case file. . . . 

 

            6.         Walsh contends that he wanted the Trial
Court to access [sic] punishment, but the jury did.  There is no filed election for jury assessment
of punishment and trial counsel made no objection.  This is treated in this brief in a separate
point. . . . 

 

            7.         Walsh contends that his trial attorney
improperly disclosed to the State that it had not yet enhanced the punishment.
. . .  There is no record to support
Walsh’s contention, other than his word vs. that of his trial attorney and the
State’s attorney denying same. 

 

            8.         Walsh contends the State in a prior
pre-trial hearing refused to honor its plea bargain agreement.  There is no record made or available of this
matter. . . . 

 

            9.         Walsh complains of his trial attorney
failing to object sufficiently enough. 
The record reflects that trial counsel could have objected to some
leading questions by the State and the trial counsel should have objected to
the inclusion of the law of parties instruction into the charge and should have
caught the punishment election mix-up. 

 

            10.       Walsh contends he was not allowed to show
that Eddie Pruitt committed the offense, that Mr. Byrd (the prosecutor) put
words in his mouth during the punishment phase, and that his trial attorney did
not ask to poll the jury even though Walsh wanted it done. . . .  [T]he record does not indicate Walsh’s
personal contention about polling the jury. . . . the Presiding Juror
acknowledged that the punishment verdict was unanimous.  The other objections concern answers of Walsh
as a witness on cross examination and the lack of proof concerning Eddie Pruitt
of which there is no evidence. 

 

            11.       Lastly, Walsh contends that the trial
attorney’s closing argument at punishment, “re: not asking for the 25 years
minimum” was evidence of ineffective assistance. . . . This is a question of
context more than substance when a defendant is found guilty.  

 

            Allegations
of ineffectiveness must be firmly founded in the record.  Bone v.
State, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002).  The brief affirmatively admits the record
does not support claims 1, 2, 5, 7, and 8. 
We will not address them.  Since
the brief suggests Walsh’s complaints 3, 4, 10, and 11 are without merit, and
we agree, we will not address each of them. 

            As
to complaints 9 (failure to make certain objections) and 6 (failure to object
to jury assessment of punishment), no caselaw or authority is provided in
support.  A point of error that is
conclusory and cites no authority presents nothing for review.  Hankins v. State, 132 S.W.3d 380, 385 (Tex. Crim.
App. 2004).  If a point of error is
inadequately briefed, we will not address it. 
See Tex. R. App. P.
38.1; Vuong v. State,
830 S.W.2d 929, 940 (Tex. Crim. App. 1992). 
Further, the record is silent as to any reasons explaining trial counsel’s
actions and we will not so speculate.  See Thompson v. State, 9 S.W.3d 808, 814
(Tex. Crim. App. 1999).  Numerous reasons
can be imagined as to why specific objections were not made.  As we will discuss in connection with the
next point, it appears from counsel’s statements during voir dire examination
that Walsh and his attorney had decided it was best to submit the punishment
issue to the jury.  Absent a record
revealing trial counsel’s strategy or motivation, Walsh cannot overcome the
strong presumption that counsel’s actions fell within the wide range of reasonable
professional assistance.  Id.   

            We
overrule all of Walsh’s ineffective assistance points of error. 

III.       Allowing the Jury to
Determine Punishment Did Not Result in Reversible Error

            Walsh
filed a written election asking the trial court to assess punishment several
months before trial.  Regardless of that
motion, because Walsh did not elect for the jury to assess punishment “in
writing before the commencement of the voir dire examination of the jury panel,”
it was the judge’s responsibility to do so.  Tex.
Code Crim. Proc. Ann. art. 37.07, § 2(b) (Vernon Supp. 2009).  Therefore, Walsh contends the trial court was
without authority to hold the punishment hearing before the jury.

            This
case mirrors cases previously decided by the Texas Court of Criminal Appeals.  Fontenot
v. State, 500 S.W.2d 843, 844 (Tex. Crim. App. 1973); Dickson v. State, 492 S.W.2d 267 (Tex. Crim. App. 1973).  Here, counsel did not object to assessment of
punishment by the jury.   Dickson asked “[i]s there anything
inherently detrimental in the jury assessing punishment which appellant could
not waive by his failure to object to such procedure?  We think not.” 
Dickson, 492 S.W.2d at 270. 
Noting that “a defendant can waive statutory rights with regard to
assessment of punishment,” the court concluded “[a]lthough the jury was not
authorized to assess punishment under Article 37.07, Sec. 2(b) . . . ., in the
instant case, we conclude that in view of appellant’s failure to object to such
procedure, no reversible error is presented.” 
Id.; see Fontenot, 500 S.W.2d
at 844; see also Gibson v. State, 549
S.W.2d 741, 743 (Tex. Crim. App. 1977); State
v. Baize, 947 S.W.2d 307, 311 (Tex. App.––Amarillo 1997), aff’d, 981 S.W.2d 204 (Tex. Crim. App.
1998).  

            Here,
during voir dire, the court stated to the prospective jury panel “[i]n this
particular trial the defendant has chosen to have the jury assess his
punishment.”  Walsh’s counsel questioned
the panel about punishment theories, and did not object when the jury was
seated in the punishment phase.  Further,
before submitting the punishment charge to the jury, counsel was asked for
objections and no objection was made on this basis.  Counsel continued to present the punishment
case to the jury and did not complain to the trial court of the alleged error
in Walsh’s motion for new trial or otherwise. 
In accord with established precedent, we conclude Walsh failed to
preserve the issue of whether the trial court erred in allowing the jury to
assess punishment.  Therefore, we
overrule Walsh’s last point of error.  

IV.       Conclusion 

            We
affirm the judgment of the trial court. 

 

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          May
27, 2010

Date Decided:             May
28, 2010

 

Do Not Publish











[1]According
to expert testimony, the probability of an unrelated white male Caucasian being
selected was one in 16.74 quintillion or 2.57 billion times the world’s
population.

 





[2]“[T]he
fingerprints of an accused, which necessarily must have been made at the time
of the burglary, are sufficient to sustain a burglary conviction without
further evidence of identification.”  Phelps v. State, 594 S.W.2d 434, 435
(Tex. Crim. App. [Panel Op.] 1980); Hernandez
v. State, 190 S.W.3d 856, 864 (Tex. App.––Corpus Christi 2006, no pet.); Villarreal v. State, 79 S.W.3d 806, 811
(Tex. App.––Corpus Christi 2002, pet. ref’d). 
Walsh agrees that “[t]he blood DNA comparison may prove beyond a reasonable
doubt Walsh’s identification.”  





[3]Anders v. California, 386 U.S. 738
(1967).