

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-16-00144-CR

---

ANTONIO MOORE, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 14F0611-102

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

After being charged in two separate indictments, Antonio Moore was convicted by a jury of felony murder and intoxication assault[1] arising out of an automobile accident that killed one person and injured another. As a result of his felony murder conviction, Moore was sentenced as a habitual offender to ninety-nine years in prison. Moore appeals, claiming that (1) he received ineffective assistance of counsel at trial and (2) the State failed to present sufficient evidence to prove he was guilty of felony murder. Because we find Moore received effective assistance of counsel at trial and the State presented sufficient evidence to prove Moore was guilty of felony murder, we affirm the judgment of the trial court.

## I.    Background

About 4:15 p.m. on Memorial Day May 24, 2014, Texas Department of Public Safety Trooper Michael Ferguson came upon a two-vehicle crash that had just occurred on U.S. Highway 67 in Bowie County, Texas. Upon his arrival, Ferguson learned that Janette Hale had been the driver of one of the vehicles[2] and that the other vehicle had been driven by Moore.[3] At trial, Hale testified as to what occurred just before the collision, stating that she first noticed an "out of control" car heading toward her on the highway. Hale identified the "out of control" car as being

---

[1]Moore also appeals his intoxication assault conviction in our cause number 06-16-00145-CR.

[2]Hale was driving a white Hyundai Sonata and was traveling westbound on Highway 67.

[3]Moore was driving a gray Chevrolet Impala and was traveling eastbound on Highway 67.

a Chevrolet Impala.  Hale stated that once the vehicle had gotten around the other cars, she believed the driver had regained control of the car.[4]  Hale testified,

> I get back to hitting 60.  All of the sudden, he just careens over into my lane like this.  I see him starting to come toward my lane, like he was going to do a -- it looked like you were going to do a donut in the middle of the road.  So he just careens over.  I take both feet on the brake, and I brace for impact.

Hale stated that she did not see any other vehicle hit Moore's car prior to the collision nor did she see any other vehicle sideswipe his vehicle.[5]

Chris Jeans, who was traveling in the same direction as Moore that day, also witnessed Moore's actions immediately before the collision.  Jeans stated, "It come around, around past me and then switched lanes, and it got up close to this car and then switched lanes.  And then it had to -- ran up on this car pretty fast.  So it had to slow down, and that's when he started fishtailing."  Jeans believed that Moore had regained control of his vehicle, but "then all of a sudden, [it] just went straight across to the other lanes of traffic."  Jeans testified that he saw the vehicles collide and that he did not observe any other vehicle sideswipe Moore's vehicle.[6]  Jeans went on to state

---

[4]Ferguson also testified that several of the witnesses he spoke to at the scene stated that just prior to the collision, Moore had been in the process of passing a vehicle that was pulling a trailer.

[5]According to Hale, "[M]y arm just fell in my lap."  Hale knew it was broken because she immediately felt the pain.  Believing she was going to pass out, she sat down.  "I felt -- my whole body was hurting."  As a result of the collision, Hale suffered a dislocated shoulder, fractured ribs, and multiple fractures to her arm.  Hale explained that doctors had performed surgery and implanted rods in her arm.  She stated that the rods would be in her arm for the remainder of her life and that she was unable to perform the work she had been doing due to pain and numbness in her arm.

[6]Jeans' wife, Rebecca, described a similar version of the events leading up to the collision.  In addition, Rebecca stated, "The way I have explained it, of course, to my friends and family when it happened, was it looked like the hand of God took [Moore's] car and just turned it to the left straight across in front of her.  I've never seen anything like it."

that he was traveling the speed limit but that Moore was driving his vehicle at a higher rate of speed. "I mean, it wasn't a whole lot faster, but, yes, it was faster."

Ferguson testified that immediately following the collision, he made contact with Moore, who had bloodshot eyes, slurred speech, and smelled of alcohol. According to Ferguson, there were several bystanders at the scene, including three nurses. One of the nurses was in the process of rendering aid to Moore's passenger, Karl Payne, who was still in the passenger seat of Moore's vehicle. Ferguson stated, "[Payne] would quit breathing, and then she would tap him on the chest and tell him, keep breathing, keep breathing. He'd take a gargled gasp and then stop at that point."

Paramedic, Shon Matthews, testified that upon arriving at the scene, he immediately began to render aid to Payne. Matthews stated that Payne was leaning over toward the driver's side of the vehicle and that Payne's neck was in a position that he referred to as "incompatible with life." According to Matthews, when he attempted to reposition Payne's airway, "his neck had no form. It was like his spinal cord was not intact." Following standard procedure, Matthews checked for Payne's pulse, but was unable to find one. Payne was then taken from the scene by ambulance to the funeral home. It was later determined that Payne had died as a result of blunt force trauma.

Kevin Plunk, also a paramedic, testified that when he arrived at the scene, he began to render aid to Moore, who was complaining of flank and side pain. According to Plunk, Moore did not appear to have any cuts, bruises, or scrapes, and was able to speak. While loading Moore in the ambulance, Plunk smelled the "obvious" odor of alcohol. Plunk testified that when he asked Moore if he had been drinking alcohol, Moore responded that he had consumed six to seven beers. In Plunk's opinion, Moore had consumed more than the "average amount" of alcohol.

4

After Moore had been transported to the hospital, Ferguson went to speak to him about the incident. According to Ferguson, Moore informed him that he had consumed six or seven beers at his mother's home in Maud and that he was in the process of returning to his home in Hooks. While at the hospital, Ferguson performed a horizontal gaze nystagmus[7] test (HGN test) on Moore, and based on the results, Ferguson believed that Moore was intoxicated.[8] At that point, Ferguson obtained a search warrant for the purpose of retrieving a blood sample from Moore in order to determine his blood alcohol content. Around 7:25 p.m., Moore's blood was drawn, and it was later determined that his blood alcohol content was 0.196. Ferguson testified that after concluding his investigation, he believed that the contributing factors to the collision were: (1) the vehicle driven by Moore, (2) was traveling at an unsafe speed, and (3) the driver was under the influence of alcohol.[9]

In addition, Karen Ream, a forensic scientist for the Texas Department of Public Safety, explained to the jury that she had performed an analysis on Moore's blood sample and that the result of the analysis showed that Moore's blood alcohol content was 0.196. Ream testified that a blood alcohol content of 0.196 was over two times the legal limit and that an individual having a blood alcohol content of 0.196 would not have normal use of his mental and physical faculties. Moreover, Ream explained that a person who consumes alcohol on a regular basis "would still not

---

[7]Ferguson explained to the jury that "horizontal gaze nystagmus is the involuntary jerking of the eye as it looks toward the side."

[8]Ferguson stated that he performed the HGN test at approximately seven o'clock p.m., which was almost three hours after the collision had occurred.

[9]In reaching his conclusion, Ferguson noted that on the day of the collision, it had not rained, the roads were not wet, there were no lighting problems, and there were no obstructions in the road.

5

have the normal use of their mental or physical faculties. They would just have a learned tolerance."

## II.    Discussion

### A.    Moore Received Effective Assistance of Counsel

Moore contends he received ineffective assistance of counsel at trial because his counsel (1) failed to investigate and (2) failed to object to inadmissible evidence. The State responds that Moore has not shown that trial counsel's performance was deficient and that even if Moore could do so, he cannot show that his counsel's alleged errors prejudiced him at trial.

#### 1.    Applicable Law

The right to counsel does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). In order to prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*. 466 U.S. 668, 687–88 (1984); *see also Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009). The first prong requires a showing that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. This requirement can be difficult to meet since there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The second *Strickland* prong (to which reference is sometimes made as "the prejudice prong") requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 694. "A reasonable

probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id*.

Thus, in order to establish prejudice,

> an applicant must show "that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result was reliable." [*Id.*] at 687, 104 S.Ct. 2052. It is not sufficient for Applicant to show "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S.Ct. 2052. Rather, [he] must show that "there is a reasonable probability that, absent the errors, the fact-finder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. 2052.
>
> . . . .
>
> The applicant has the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Allegations of ineffectiveness must be based on the record, and the presumption of a sound trial strategy cannot be overcome absent evidence in the record of the attorney's reasons for his conduct. *Busby v. State*, 990 S.W.2d 263, 269 (Tex. Crim. App. 1999). The reviewing court must look to the totality of the representation, and its decision must be based on the facts of the particular case, viewed at the time of counsel's conduct so as to eliminate hindsight bias. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. In all cases, the "ultimate focus of inquiry must be on the fundamental fairness of the proceeding." *Id.* at 696, 104 S.Ct. 2052.

*Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

A failure to make a showing under either prong defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). When a claim of ineffective assistance of counsel is raised for the first time on direct appeal, the record "is in almost all cases inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance."[10] *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). Essentially, a

---

[10]The standard of review is considerably more deferential to trial counsel's actions when a defendant asserts his claim for the first time on appeal because "[t]he reasonableness of counsel's choices often involves facts that do not appear in the appellate record[,]" *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) (quoting *Mitchell v. State*,

7

defendant must show that under prevailing professional standards, no competent attorney would do what trial counsel did or no competent attorney would fail to do what trial counsel failed to do. *Id.*

### 2. Discussion

#### a. Failure to Investigate

Moore states that his defensive theory at trial rested on two issues: (1) that he was not intoxicated at the time the alleged offense took place and (2) that another vehicle side swiped his vehicle, forcing him to cross the road and strike Hale's vehicle. Moore contends that his trial counsel failed to speak to several witnesses prior to trial, resulting in counsel's inability to properly question the State's witnesses and advance a persuasive defense.

Trial counsel has a duty to make an independent investigation of the facts of a case, which includes locating and interviewing potential witnesses. *Ex parte Welborn*, 785 S.W.2d 391, 394 (Tex. Crim. App. 1990). The breach of the duty to investigate may result in a determination of ineffective assistance of counsel "where the result is that any viable defense available to the accused is not advanced." *Ex parte Ybarra*, 629 S.W.2d 943, 946 (Tex. Crim. App. 1982). In defining a trial counsel's duty to investigate, the United States Supreme Court stated that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of

_____

68 S.W.3d 640, 642 (Tex. Crim. App. 2002)) (alteration in original), and because "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective," *Id.* at 111.

8

deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Moreover, in order to obtain relief on an ineffective assistance of counsel claim based on counsel's failure to call a particular witness, the accused must show that the witness was available to testify and that his testimony would have been favorable to the accused and benefitted his defense. *Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004).

Moore contends the record is replete with exchanges between trial counsel and the State's witnesses showing counsel's lack of understanding of the facts and his inability to properly question the witnesses. Citing *Cooks v. State*, 240 S.W.3d 906, 912 (Tex. Crim. App. 2007), Moore states,

> While a claim for ineffective assistance based on trial counsel's general failure to investigate the facts of the case fails absent a showing of what the investigation would have revealed that reasonably could have changed the result of the case[,] the prejudice to the Appellant in front of the jury in this case by his counsel not even knowing the facts of his own defense, coupled with the other factors showing the ineffectiveness of his representation, is apparent.

In *Cooks*, Cooks was represented by retained counsel at trial and pled guilty without the benefit of a plea agreement. After the trial court sentenced Cooks to fifteen years in prison, Cooks' retained attorney informed him, on the record, of his right to appeal. Trial counsel advised the trial court that Cooks did not have funds to retain him for an appeal and that although counsel did not see grounds for an appeal, Cooks was requesting the appointment of an appellate attorney. *Id.* at 908. The trial attorney filed a notice of appeal twenty days after sentencing, which also included a request for the appointment of an appellate attorney. On that date, the trial court appointed an appellate attorney. However, no motion for new trial was filed before the thirty-day deadline imposed by Rule 21.1(a) of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 21.1(a)

9

About four months later, appellate counsel filed a motion to abate the appeal to allow for an out-of-time motion for new trial. *Cooks*, 240 S.W.3d at 908. The motion alleged that Cooks had no representation during the period from sentencing to the time appellate counsel was appointed and that appellate counsel did not have time "to adequately assist appellant in deciding whether to file a motion for new trial." *Id*. at 909. Cooks also asserted that trial counsel was ineffective at sentencing because he failed to call a material witness and did not conduct a sufficient investigation. *Id.*

The Texas Court of Criminal Appeals observed that Cooks "was unrepresented by counsel during the initial twenty days of the 30-day period." *Id*. at 911 (citation omitted). This, along with

> appellate counsel's assertion in the Motion To Abate that there was not enough time after her appointment for her to adequately assist appellant in deciding whether to file a motion for new trial, [we]re sufficient to rebut the presumption that appellant was adequately represented by counsel during this entire 30-day period.

*Id*. The court held, however, that a harm analysis was necessary and that Cook's deprivation of counsel was harmless beyond a reasonable doubt, finding that the motion to abate had presented no "facially plausible claims" that Cooks could have presented in a motion for new trial, even though appellate counsel had more than four months "to discover any such claims from the time of her appointment . . . until she filed the Motion to Abate." *Id*. at 912.

The procedural and factual backgrounds of this case and those found in *Cooks* are entirely different. We fail to see how the holding in *Cooks* assists Moore with his assertions in this case. Here, Moore points to various portions of the record wherein he believes his trial counsel was inadequately prepared for trial, in part, based on the State's witnesses' answers to his questions. He contends that had counsel spoken to these witnesses prior to trial, he would have been prepared

10

for their answers and then had appropriate follow-up questions or defense witnesses to disprove their testimony. For example, Moore points to State's witness Ream. In his appellate brief, Moore states,

> [C]ounsel for Appellant attempted to get the witness to acknowledge that it was possible to get a false reading from her testing equipment. Her response was an emphatic no, which counsel would have known had he done any investigation prior to the witness testifying. . . . It is once again painfully obvious that counsel for Appellant did little or no investigation prior to trial.

Moore also points to trial counsel's introduction of himself to Hale, who was another witness for the State. Moore first emphasizes that counsel began his cross-examination of her by saying, "[N]ice to meet you." Moore goes on to complain that when his counsel questioned Hale about the potential for another vehicle to have side swiped his car, Hale stated that she did not see any other vehicles involved in the collision. Moore contends that had counsel spoken to Hale prior to trial, he would have known, and been prepared for, her response.

While Moore may have disagreed with the answers the State's witnesses gave in response to his counsel's questions, he has failed to show what evidence his trial counsel would have uncovered had he conducted a more thorough investigation. Likewise, he has not shown what undiscovered evidence or testimony he would have presented at trial in an effort to refute the State's evidence. Thus, Moore has not demonstrated that he was prejudiced by his counsel's lack of investigation so much so that the result of the trial would have been different.

### b. Failure to Object

An accused may be deprived of effective assistance of counsel if his counsel allows the admission of the State's evidence that should not have been admitted. *Lassere v. State*, 458 S.W.2d

11

81 (Tex. Crim. App. 1970). In order "[t]o show ineffective assistance of counsel for the failure to object during trial, the applicant must show that the trial judge would have committed error in overruling the objection." *White*, 160 S.W.3d at 53. Moreover, any error in trial counsel's trial strategy will be deemed inadequate representation only if counsel's actions are without any conceivable basis. *Schaired v. State*, 786 S.W.2d 497, 499 (Tex. App.—Houston [1st Dist.] 1990, order).

Moore complains that trial counsel allowed the State to introduce his prior felony convictions before it proved the facts making up the bases of the charges upon which he was being tried. He contends that this evidence was "inadmissible as irrelevant" and that its "prejudicial effect far outweighed [its] relevance . . . ." In support of his argument, Moore cites to *Martin v. State* and *Tamez v. State*, wherein the Court of Criminal Appeals held that in a case involving a charge of felony driving while intoxicated, an accused person may stipulate to the two prior convictions and the State may not refuse the accused's offer to stipulate. *Martin v. State*, 200 S.W.3d 635, 638 (Tex. Crim. App. 2006); *Tamez v. State*, 11 S.W.3d 198 (Tex. Crim. App. 2000). Moore contends that the Texas Court of Criminal Appeals made these rulings in an effort to prevent the type of prejudice that the State interjected into this case by offering Moore's prior convictions at the beginning of its case. Moore did not, however, cite to any cases that support his contention under the facts contained in the record before us, and we are unable to find any such cases.

Although Moore contends that the State's introduction of his two prior judgments for driving while intoxicated (DWI) were irrelevant and more prejudicial than probative, we disagree. A person may be convicted of felony DWI only if he has two previous convictions for the offense

12

of DWI. TEX. PENAL CODE ANN. § 49.09(b)(2) (West Supp. 2016). Thus, two prior DWI convictions are necessary elements of felony DWI. As opposed to mere enhancement paragraph allegations, the two prior convictions are a jurisdictional necessity. *Martin*, 200 S.W.3d at 640–41.

Put another way, in order to obtain a conviction for felony DWI, the State was required to prove that Moore had been convicted of the prior DWI offenses at the guilt/innocence phase of the trial. State's Exhibit 2 contained two final judgments of conviction. In the first judgment, dated October 10, 1996, a Bowie County court found Moore guilty of felony DWI. In the second judgment of conviction, also dated October 10, 1996, a Bowie County court again found Moore guilty of felony DWI. Moore did not stipulate to these prior convictions. Therefore, the probative value of the prior convictions was extremely high. Accordingly, trial counsel may have surmised that drawing attention to Moore's prior convictions, by objecting to their introduction, would have harmed Moore's defense far more than it would have helped it. We cannot find that Moore's counsel was ineffective for failing to object to the introduction of Moore's prior convictions prior to the State presenting the remainder of its case.

Moore also claims that trial counsel was ineffective for failing to object to the admission of several photographs of the interior of Moore's vehicle as it was found at the scene. Specifically, Moore complains of the introduction of a photograph of a relatively small blood stain on the passenger seat[11] and a photograph of a radar detector on the dash of his vehicle. Moore contends

---

[11]Moore contends that there was no reason to offer the photograph of the blood stain because his passenger's death was never a contested issue.

that neither of these photographs was relevant and that they "were clearly only offered to attempt to inflame the jury."

Rule 403 of the Texas Rules of Appellate Procedure requires that a photograph have some probative value which is not substantially outweighed by its prejudicial nature. TEX. R. EVID. 403. A court may consider many factors in determining whether the probative value of a photograph is substantially outweighed by its tendency to inflame, including (1) the number of exhibits offered, (2) their repugnance, (3) their detail, (4) their size, (5) whether they are in black and white or in color, (3) whether they are taken at close range, (6) whether the body is clothed or naked, (8) the availability of other means of proof, and (9) other circumstances relating to an individual case. *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002). A photograph is neither cumulative nor lacking in significance simply because it corroborates other kinds of evidence. *Chamberline v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999).

The record does not reflect the reasoning behind counsel's choice to refrain from objecting to the complained-of photographs. However, in reviewing the photographs, and considering the aforementioned factors, a photograph of a relatively small blood stain on the passenger seat of the vehicle and a photograph of a radar detector do not seem highly inflammatory or prejudicial. Payne's body had been removed from the vehicle, the photographs were not overly gruesome or excessively repugnant, they were not taken at a particularly close range, and they were admitted with about forty additional exhibits, twenty-five of which were also photographs. Conceivably, trial counsel could have believed that an objection to the introduction of either of the photographs would have drawn unnecessary attention to them by the jury. We will therefore presume that when

14

counsel refrained from lodging objections to the photographs, his decision was based on reasonable trial strategy.

Moore also claims that his trial counsel was ineffective for failing to object to various questions the State asked Ferguson. First, Moore contends that Ferguson was required to make a legal finding when the State asked him if Hale's injuries met "the legal definition of serious bodily injury."[12] He goes on to complain of counsel's failure to object when the State asked Ferguson if, in his opinion, Moore "commit[ted] intox[ication] manslaughter, now felony murder, and intoxication assault." Moore contends that this question "touched on an ultimate issue." The State responds that as a commissioned officer with the Texas Department of Public Safety, Ferguson possessed adequate experience to opine as to whether Hale suffered serious bodily injury and whether Moore committed the alleged offenses.

Whether a defendant is guilty is a conclusion the jury is tasked with reaching based upon the trial court's instructions as found in its charge to the jury, coupled with the evidence admitted at trial. *Williams v. State*, 417 S.W.3d 162, 182 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). A witness is allowed to testify to his opinion if it is "(a) rationally based on the witness's perception; and (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue." TEX. R. EVID. 701. Moreover, the Texas Rules of Evidence do not specifically forbid a witness from testifying to a legal conclusion. "An opinion is not objectionable just

---

[12]"Serious bodily injury" is bodily injury that "creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46) (West Supp. 2016). "'Serious bodily injury' may be established without a physician's testimony when the injury and its effects are obvious." *Sizemore v. State*, 387 S.W.3d 824, 828 (Tex. App.—Amarillo 2012, pet. ref'd). The person who sustained the injury is qualified to express an opinion about the seriousness of that injury. *Hart v. State*, 581 S.W.2d 675, 677 (Tex. Crim. App. [Panel Op.] 1979).

15

because it embraces an ultimate issue." TEX. R. EVID. 704. For example, a police officer may testify regarding his inspection of the evidence. *See Williams*, 417 S.W.3d at 182 (holding admissible officer's testimony in murder trial that the crime scene suggested "something sexual" and that it did not appear to be a "normal sexual assault"); *Ex parte Nailor*, 149 S.W.3d 125, 134–35 (Tex. Crim. App. 2004) (holding counsel not ineffective for failing to object to officer's opinion testimony in assault trial that defendant had not been attacked); *Solomon v. State*, 49 S.W.3d 356, 364 (Tex. Crim. App. 2001) (holding admissible witness's testimony that defendant was responsible for robbery).

Assuming, without finding, that trial counsel was ineffective for failing to object to the complained-of testimony, the admission of Ferguson's testimony was harmless. In its charge, the trial court instructed the jury,

> As jurors you are the exclusive judges of the facts proved, the credibility of the witnesses, and the weight given their testimony. That is, you may believe all, any part, or none of the testimony of any witness you have heard in this case. However, in matters of law, you are governed by any instructions previously given by the Court and the instructions contained in this charge.

The trial court's instructions to the jury set out the definitions for the offenses of murder, intoxication manslaughter, intoxication assault, felony DWI, and DWI. The trial court also instructed the jury that "[s]erious bodily injury' is meant [sic] bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." There was substantial testimony from other witnesses regarding the extent of Hale's injuries, including the testimony of Hale.

16

Considering that evidence, in conjunction with the trial court's instructions, we do not find that had counsel not made this alleged error, the result of the proceedings would have been different.

Finally, Moore contends that his counsel was ineffective because he failed to object to the testimony of the State's chemistry expert, Ream, with regard to the retrograde extrapolation of Moore's blood alcohol content. In support of his position, Moore cites to *Mata v. State*, 46 S.W.3d 902 (Tex. Crim. App. 2001), and *Bagheri v. State*, 119 S.W.3d 755 (Tex. Crim. App. 2003), neither of which addresses an ineffective assistance of counsel claim. In *Mata*, the Texas Court of Criminal Appeals addressed the sole issue of whether an expert witness "'reliably applied the science of retrograde extrapolation' in Mata's trial." *Mata*, 46 S.W.3d at 910. In *Bagheri*, the court held that the retrograde extrapolation evidence offered at trial in that specific case was unreliable. *Bagheri*, 119 S.W.3d at 756–57.

In this case, prior to Ream's testimony, trial counsel was allowed to take Ream on voir dire examination for the purpose of challenging her credentials to be qualified to testify as an expert regarding an individual's blood alcohol content.[13] During this portion of the trial, Moore objected to Ream testifying as an expert on the retrograde extrapolation of Moore's blood. "Your Honor, it's not, but the argument, simply put, is that based on the facts of this case, she hasn't been put in a position to be able to do it in a manner that would qualitatively tell us anything that would be reliable." The trial court noted counsel's objection and stated that it would carry the objection until "[it got] to the point if and when they ask[ed] that question." The jury returned to the

---

[13]"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702.

courtroom whereupon the State resumed its questioning of Ream. Ream testified as to the procedure she used in order to determine the blood alcohol concentration of a specific sample of blood. Ream continued by informing the jury that she had tested Moore's blood for its blood alcohol content, and the result was 0.196. After additional testimony from Ream, the State asked,

> Okay. So hypothetically, if there was an event that occurred at four o'clock, and an individual was taken to the hospital, continuously monitored, did not have anything else to drink for three and a half hours, and then a blood draw was taken three and a half hours after the event, and their blood alcohol content was -- is it possible -- their blood alcohol content at the time of the blood draw was a .196, is it possible that they were at the legal limit of .08 at the time of the event three and a half hours prior?

Trial counsel made no objection to the State's question. After stating how she calculated her answer, Ream responded, in part,

> So between the time of the incident and the time of the draw, they would have to absorb nine more standard drinks, nine beers, nine whatever, absorb. So they would have that much in their stomach. If they didn't eat or drink -- I'm sorry, if they didn't drink any more alcohol after the incident, then, of course, it had to have been taken in before the incident.

Again, trial counsel did not object to Ream's answer; however, on cross-examination, trial counsel asked,

> You were given a hypothetical, and you were asked some questions with respect to it. And you gave answers, and the answers seemed to suggest that in order to get to where they wanted you to get, you would have to know some things about the person whose blood you analyzed in order to backtrack. I think one of the things you suggested is you would have to know how much the person had had to drink, correct?

Ream responded that counsel was correct. Counsel then asked Ream if she would need to know how much the individual had to eat, to which she responded she would. Counsel continued by asking, "You would have to know the time period in which all of these things happen[ed]?" Ream

18

responded, "That's the most important one, but yes." Counsel then asked Ream about a litany of information that Ream might need in order to make an appropriate retrograde extrapolation calculation as to Moore, which information she did not have. Finally, counsel asked, "But, again, you had been asked hypothets [sic] that supposedly related back to the time of the accident, but the blood draw gives you a determination of what the alcohol count was at the time of the blood draw?" Ream answered, "Right."

Moore claims that trial counsel was ineffective for his failure to object to the State's questioning Ream regarding retrograde extrapolation evidence. We disagree. It is apparent from the record that trial counsel cross-examined Ream extensively and effectively as to this issue. Trial counsel made it evident to the jury, through his cross-examination of Ream, that she did not have the ability to testify to an accurate retrograde extrapolation of Moore's blood. Based on the record before us, we cannot say that trial counsel's failure to object, which resulted in his opportunity to undermine Ream's testimony, was not part of a sound trial strategy.

### c. Trial Counsel's Closing Argument

Moore also complains of a portion of trial counsel's closing argument wherein he stated, "You get to judge the credibility of everybody that came up here. That's why I say Trooper Ferguson told the truth. There's something about the truth, it just rings all the way through, all the way through." Moore contends that trial counsel was emphasizing Ferguson's veracity as it related to his testimony that Hale suffered serious bodily injury and that Moore's actions amounted to felony murder.

19

A review of the record reveals something entirely different.  Prior to making the complained-of statement, trial counsel was speaking to the jury on the issue of whether Moore was intoxicated at the time of the collision.  In maintaining that Moore was *not* intoxicated, trial counsel stated,

> They have to meet their burden on intoxication in order to sustain the convictions, ladies and gentlemen.  They haven't done it.  They're just hoping that this event is so tragic you won't make them do it, but that's not the way the law works.  Simply not the case.
> Nobody up there told you he was drunk.  [Ferguson] said, "I had clues," and he's the expert on the scene.  He didn't make an arrest.  She made a big deal, he was not arrested at that point.  But now they want you to come back and almost a year to the day, just based on emotions, make the same determination that [Ferguson] was unwilling to make.

It is clear from the record that counsel was directing the jury's attention to Ferguson's testimony; however, it also appears that counsel did so in an effort to highlight the fact that Ferguson did not make an on-scene arrest at the time of the alleged offense, and thus, Moore was not intoxicated at the time.

For these reasons, we cannot conclude on the record before us that Moore's trial counsel's performance was deficient.  Thus, we find Moore's claim of ineffective assistance of counsel to be meritless.  We overrule Moore's first point of error.

**B.      Sufficient Evidence Existed to Support the Jury's Verdict of Guilt**

Next, Moore contends that the evidence was insufficient to support the jury's verdict of guilt as it relates to his felony murder conviction.

20

### 1.  Standard of Review

In evaluating legal sufficiency in this case, we must review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found, beyond a reasonable doubt, that Moore was guilty of felony murder. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).  Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring).

We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).  Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

### 2.  Analysis

The felony murder statute provides that an individual commits the offense of felony murder when he

commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2011).

[T]hat Section 19.02(b)(3) dispenses with a culpable mental state is consistent with the historical purpose of the felony-murder rule, the very essence of which is to make a person guilty of an "unintentional" murder when he causes another person's death during the commission of some type of a felony.

*Lomax v. State*, 233 S.W.3d 302, 305 (Tex. Crim. App. 2007).

The indictment against Moore stated,

[O]n or about May 24, 2014, [Moore] did then and there, intentionally, knowingly or recklessly commit or attempt to commit a felony offense, to-wit: Driving While Intoxicated 3rd or More, and while in the course of and in furtherance of the commission or attempt of said offense did then and there commit or attempt to commit an act clearly dangerous to human life, namely, causing a collision by driving or operating his vehicle into oncoming traffic, which caused the death of Karl Payne.

Moore maintains that the State failed to show he committed an act clearly dangerous to human life. In support of his contention, Moore directs us to Jeans' testimony that Moore appeared to "fish tail" after he slowed down due to the presence of a vehicle in front of him. Moore also points to the testimony of Rebecca Jeans wherein she stated, "The way I have explained it, of course, to my friends and family when it happened, was it looked like the hand of God took his car and just turned it to the left straight across in front of her. I've never seen anything like it." In addition, Moore directs us to Ferguson's testimony that Moore was not traveling at a reckless speed. Finally, Moore emphasizes that Ferguson did not state that he examined Moore's vehicle to determine whether there had been any mechanical malfunction. Based on these witnesses'

22

testimony, Moore seems to be arguing that the State may have proved that Moore's *vehicle* committed an act clearly dangerous to human life, but it failed to prove that *he* did.[14] We disagree.

The jury is free to believe or disbelieve all or any part of the testimony of a witness. *See Cain v. State*, 958 S.W.2d 404, 409 (Tex. Crim. App. 1997). To begin with, the jury heard testimony that Moore had been convicted of at least two prior DWI offenses. In addition, multiple witnesses testified that Moore had been the driver of the Chevrolet Impala, which collided with Hale's vehicle, the Hyundai Sonata. Further, Ferguson identified for the jury that the skid marks from Moore's vehicle indicated that he had traveled from the eastbound outside lane, across two lanes of traffic, and then hit Hale's vehicle. In addition to Ferguson's testimony, Hale testified, among other things, that Moore first appeared to have gained control of his vehicle, but then careened over into her lane, causing the collision of the two vehicles. Ferguson also testified that he conducted a fatality crash investigation after the collision occurred and that he concluded that Moore's actions of driving at an unsafe speed and while under the influence of alcohol contributed to the accident. Moreover, Ream testified that she examined Moore's blood sample, which had been taken at least two hours after the collision, and that his blood alcohol content was 0.196, more than two times the limit in which a person is legally allowed to drive an automobile. Ream also

---

[14]In his brief to this Court, Moore states,

> For evidence to be sufficient to convict, the State must prove each element of the offense beyond a reasonable doubt. *Jackson*, [443 U.S.] at 319. As such the State was required [sic] that the Appellant caused the collision by driving or operating his vehicle into oncoming traffic. The record in this cause is completely void of any evidence that the Appellant did any act much less drive or operate his vehicle into oncoming traffic. It is readily apparent from the testimony of Mrs. Jean and from Trooper Ferguson that the Appellant's vehicle turned unexpectedly and that it was not being operated unsafely, the [sic] State is unable to meet its burden.

stated that an individual with a blood alcohol content of 0.196 would not have the normal use of his mental or physical faculties.

Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that Moore committed the offense of felony DWI and that in the course of and in furtherance of the commission of that felony DWI, he committed an act clearly dangerous to human life by driving his vehicle in an unsafe manner into oncoming traffic, causing his vehicle to collide with Hale's vehicle and resulting in Payne's death. Accordingly, we hold that the evidence is sufficient to support Moore's conviction for felony murder.

We overrule Moore's second point of error.

## III.    Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:      January 8, 2018
Date Decided:        March 28, 2018

Do Not Publish