

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00104-CR

DEREK LANE ARMSTRONG, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 28130

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

Derek Lane Armstrong pled guilty to, and was convicted of, the first-degree felony offense of manufacture or delivery of a controlled substance, namely methamphetamine, in an amount of four grams or more, but less than 200 grams. After Armstrong's election of jury-assessed punishment, he was sentenced, consistent with the jury's determination, to twenty-five years' confinement in prison. In his sole point of error on appeal, Armstrong maintains that he received ineffective assistance of counsel at trial. Because we find that Armstrong failed to overcome the strong presumption that his trial counsel provided adequate assistance, we affirm the trial court's judgment.

## I.    Background

At trial, Leigh Foreman, a detective with the Paris Police Department, testified that during his extensive time with the department, his primary responsibilities centered on narcotics and violent crime investigations.[1] He stated that he had received specialized training in those areas, including at least forty hours of continuing education every two years. Foreman stated that it was not at all uncommon for the department to work in unison with the Lamar County Sheriff's Office as well as federal agencies, explaining, "It's just something we develop. It's effective, and it seems to do a better job of stopping the flow of drugs." In February 2018, Foreman, along with Captain Anson Amis,[2] interviewed Armstrong. At trial, portions of the recording of the interview were

---

[1]Foreman had been a certified peace officer for about twenty years and worked on narcotics investigations for almost seventeen of those years.

[2]Amis was the case agent.

admitted into evidence and published to the jury. Foreman also testified to, among other things, what he learned during the interview with Armstrong.

On appeal, Armstrong contends that his trial counsel was ineffective because he failed to object to much of Foreman's testimony regarding the interview and failed to object to portions of the content of the recording itself. The crux of the complained-of evidence centers on Foreman's belief that Armstrong was being deceitful and that he failed to cooperate with law enforcement officers in their investigation.

For example, Armstrong complains of Foreman's testimony regarding the relationship he had with "Casper," who was identified as a drug supplier and, specifically, whether Armstrong was being honest about the length of their relationship:

> Q. It is that sort of thing that -- there's sort of a vetting process and a test to see if this person is reliable before you can get that far into things?
>
> A. Well, certainly it's a test and you are vetted, but the vetting never stops. If they never trust you, if they get hinkey, or they ever are scared of you, then they will pull the plug on it. It's a constant vetting, proving process. Either [Armstrong] is lying about how long he's been in it, trying to minimize, or he's actually been dealing with this guy quite a bit longer to get to that process, to meet a roommate. The roommate asked him to make a carrying case for the dope like he has. You don't do that -- it just doesn't happen in five or six trips -- five to six contacts. It doesn't happen.

According to Armstrong, Foreman's testimony was "without any foundation of personal knowledge, was not objected to, and was not challenged during cross[-]examination."[3]

---

[3]Armstrong contends that his counsel was ineffective because he failed to ask, among other things, the following questions in an effort to challenge Foreman's testimony: (1) "How do you know Casper ever reveals his true identity to anyone that ranks below him?"; (2) "Have you ever met Casper?"; and (3) "Do you even know Casper's real name?" Armstrong argues that the answers to these types of questions could have significantly impacted the jury's assessment of punishment.

In addition, Armstrong maintains that his trial counsel rendered ineffective assistance when he failed to object to or challenge Foreman's testimony regarding Armstrong's refusal to cooperate with investigators. For instance, when Foreman was asked if Armstrong was cooperative in general, he responded, "Not very." He also said, "I think it's apparent he was untruthful through the entire interview." Foreman then went on to explain the reasoning for his opinions, most of which were based on his experience with narcotics investigations.

Similarly, Armstrong also challenges the following portions of Foreman's testimony:

Q. (By [the State]) Okay. We talked a little bit about the phone and the importance of getting into a phone for investigations. Were you able to get into [Armstrong]'s phone?

A. Captain Amis was able to get into it.

Q. Was he able to recover a full amount of information or just a little bit that [Armstrong] was willing to share?

A. My understanding is just a little bit that [Armstrong] wanted to share concerning Matt Dorey, he's a narcotics dealer, user from the Blossom area.

Q. So did he limit his cooperation regarding his phone to that one individual?

A. That's my understanding; yes.

Q. And had he already given up that individual during the course of the interview?

A. Correct.

According to Armstrong, his trial counsel failed to provide effective assistance of counsel because he did not object to this portion of Foreman's direct testimony and did not challenge his testimony on cross-examination.

4

## II.     Ineffective Assistance of Counsel Has Not Been Shown

In his sole point of error, Armstrong contends that his trial counsel rendered ineffective assistance when he failed to object to or challenge Foreman's testimony because his testimony "was based on assumptions, not personal knowledge of the individuals or facts at issue in the case." Armstrong maintains that he was harmed by his counsel's failure to object to or follow-up on Foreman's testimony because his testimony "gave the false impression that what [he] said could be relied upon as gospel truth, when in fact it was not even admissible or, in the alternative, was at least easily impeached." According to Armstrong, this Court should vacate the jury's assessment of punishment, enter an order appointing new counsel, and remand the case to the trial court for a new trial on punishment. We disagree.

As many cases have noted, the right to counsel does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "In order to prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong test set forth in *Strickland v. Washington*." *Lampkin v. State*, 470 S.W.3d 876, 896 (Tex. App.—Texarkana 2015, pet. ref'd) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009) (orig. proceeding)). "The first prong requires a showing that counsel's performance fell below an objective standard of reasonableness." *Id.* at 896–97 (citing *Strickland*, 466 U.S. at 688). "This requirement can be difficult to meet since there is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* at 897 (quoting *Strickland*, 466 U.S. at 689). "This measure of deference, however, must not be watered down into a disguised form of acquiescence." *Profitt v. Waldron*,

5

831 F.2d 1245, 1248 (5th Cir. 1987) (finding ineffective assistance where counsel failed to request medical records and relied on court-appointed competency examination when he knew client had escaped from mental institution).

"When a claim of ineffective assistance of counsel is raised for the first time on direct appeal, the record 'is in almost all cases inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance.'" *Parmer*, 545 S.W.3d at 725 (citing *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005)). Moreover, where the reviewing court "can conceive potential reasonable trial strategies that counsel could have been pursuing," the court "simply cannot conclude that counsel has performed deficiently." *Id*. at 103. "[W]hen a defendant raises an ineffective assistance of counsel claim for the first time on direct appeal, he must show that 'under prevailing professional norms,' *Strickland*, 466 U.S. at 688, no competent attorney would do what trial counsel did or no competent attorney would fail to do what trial counsel failed to do." *Parmer*, 545 S.W.3d at 728 (citing *Andrews*, 159 S.W.3d at 102).

"The second *Strickland* prong, sometimes referred to as 'the prejudice prong,' requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different." *Lampkin*, 470 S.W.3d at 897 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, in order to establish prejudice,

> An applicant must show "that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result was reliable." [*Strickland*, 466 U.S.] at 687 . . . . It is not sufficient for Applicant to show "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693 . . . . Rather, [he]

6

must show that "there is a reasonable probability that, absent the errors, the fact[-]finder would have had a reasonable doubt respecting guilt." *Id*. at 695 . . . .

*Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (orig. proceeding).

The appellant has the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Allegations of ineffectiveness "must 'be firmly founded in the record.'" *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) (quoting *Thompson*, 9 S.W.3d at 813). The *Strickland* test "of necessity requires a case-by-case examination of the evidence." *Williams v. Taylor*, 529 U.S. 362, 382 (2000) (quoting *Wright v. West*, 505 U.S. 277, 308 (1992) (Kennedy, J., concurring in judgment)). "A failure to make a showing under either prong defeats a claim of ineffective assistance." *Parmer* 545 S.W.3d at 728 (citing *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003)).

The procedures to be followed at the punishment phase of the trial and the evidence that may be considered in determining punishment are set out in Article 37.07 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 (Supp.).[4] This statute authorizes the admission of evidence in the punishment phase of trial as to any matter that the court deems relevant to sentencing. *Id.* The circumstance of the offense is relevant to sentencing and may be considered by the fact-finder in determining the punishment to be assessed. *Eaves v. State*, 141 S.W.3d 686, 692 (Tex. App.—Texarkana 2004, pet. ref'd). Yet, "the question at punishment is

---

[4]Article 37.07, Section 3(a)(1), states,

> [E]vidence may be offered by the [S]tate and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, [and] the circumstances of the offense for which he is being tried . . . ."

TEX. CODE CRIM. PROC. ANN. art 37.07, § 3(a)(1) (Supp.).

not whether the defendant has committed a crime, but instead what sentence should be assessed." *Thompson v. State*, 425 S.W.3d 480, 491 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (quoting *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005)). Article 37.07 authorizes both character evidence in the form of opinion testimony and extraneous-offense evidence.

We first note that Armstrong filed an application for community supervision, asking the jury to refrain from assessing a period of confinement in prison as his punishment and to, instead, place him on community supervision. When considering whether community supervision is the appropriate punishment, the jury is required to make "two determinations—(1) the truth or falsity of the information in the defendant's motion, and (2) whether to recommend that the defendant be placed on community supervision instead of serving a term of confinement." *Ellison v. State*, 201 S.W.3d 714, 718 (Tex. Crim. App. 2006). As stated in *Pantoja v. State*,

> When evidence of a person's character or character trait is admissible—as a defendant's character traits pertaining to his suitability for community supervision are when the defendant requests community supervision—such character traits may be proved by testimony about the person's reputation or by testimony in the form of an opinion.

*Pantoja v. State*, 496 S.W.3d 186, 190 (Tex. App.—Fort Worth 2016, pet. ref'd) (citing TEX. R. EVID. 405(a); *Wilson v. State*, 71 S.W.3d 346, 349–51 (Tex. Crim. App. 2002)).

Here, Foreman testified that, in his opinion as an officer specializing in drug enforcement investigations, Armstrong failed to cooperate with officers and was being dishonest during his interview. That information was relevant in determining whether Armstrong would be a suitable candidate for community supervision. Certainly, a jury would be interested in knowing whether Armstrong would likely cooperate with his community supervision officer, follow rules and

conditions while on community supervision, and be honest about his circumstances when he reported to his community supervision officer. Accordingly, Foreman's testimony was relevant and admissible pursuant to Article 37.07 of the Texas Code of Criminal Procedure.

Likewise, Armstrong has not overcome the presumption that his counsel's failure to challenge Foreman's opinions was part of a strategic plan. *See Tong v. State*, 25 S.W.3d 707, 713–14 (Tex. Crim. App. 2000). It is reasonable to believe that Armstrong's counsel would be concerned that any responses he elicited from Foreman on cross-examination might result in testimony that was contrary to his client's benefit or that Foreman's answers to his questions would inadvertently open new avenues of inquiry by the State. Because we "can conceive [these] potential reasonable trial strategies that counsel could have been pursuing," we "simply cannot conclude that counsel has performed deficiently." *Andrews*, 159 S.W.3d at 103. Moreover, because Armstrong has not shown that his trial counsel's performance was deficient, he has failed to satisfy the first *Strickland* prong.[5] We, therefore, overrule Armstrong's point of error.

---

[5]Because Armstrong failed to satisfy the first prong of *Strickland*, we need not address *Strickland*'s second prong.

## III.     Conclusion

We affirm the trial court's judgment.


                                    Ralph K. Burgess
                                    Justice

Date Submitted:      December 6, 2019
Date Decided:        December 18, 2019

Do Not Publish