

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00084-CR

_____

CRAIG EUGENE TAYLOR, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 18F1293-005

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Justice Stevens

_____

*Jack Carter, Retired Justice, Sitting by Assignment

MEMORANDUM OPINION

A Bowie County jury found Craig Eugene Taylor guilty of aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03. On appeal, Taylor claims that his trial counsel provided ineffective assistance[1] at the punishment stage of trial by failing to object to certain testimony that Taylor claims was inadmissible hearsay. Upon review of the record and the applicable law, we find that Taylor has failed to meet his burden of showing that counsel was ineffective. As a result, we affirm the trial court's judgment.

## I.    Background

During its case-in-chief, the State proved that Taylor robbed an E-Z Mart convenience store in Texarkana, Texas. In evidence was a surveillance video that showed Taylor, with a t-shirt wrapped around his head so that only his eyes were visible, enter the store with a drawn pistol and demand the money from the store's register.[2] After threatening the E-Z Mart clerk with the gun, Taylor fled the store. Police responded to the call quickly; one drove around the area and saw an individual running away down an alley across the street from the E-Z Mart. Later, in a field next to that alley, police found a backpack with items connecting Taylor to the robbery.[3]

During the punishment phase, the State presented evidence of four other armed robberies in which Taylor was a suspect. One of those was a robbery at an Exxon convenience store in

---

[1]*See* U.S. CONST. amend. VI.

[2]Taylor left the store without obtaining any cash. Even so, "proof of a completed theft is not required to establish a robbery." *Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996).

[3]As Taylor's point of error stems from the punishment phase of the trial, we will detail relevant guilt-stage evidence as necessary in our assessment of the point of error.

Texarkana, Arkansas. Evidence concerning that robbery forms the basis of Taylor's appellate complaint.

## II. Standard of Review

To prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *see also Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009) (orig. proceeding). A failure to make a showing under either prong defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).

The first *Strickland* prong requires a showing "that counsel's performance fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This requirement can be difficult to meet since there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. As a result, the Texas Court of Criminal Appeals has said that "[t]rial counsel 'should ordinarily be afforded an opportunity to explain his actions before being'" found ineffective. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012).

When an appellate record is silent on why trial counsel failed to take certain actions, the appellant has "failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable." *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *see Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). This is because allegations of ineffectiveness "must 'be firmly founded in the record.'" *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002) (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App.

3

1999)).  When a party raises an ineffective assistance of counsel claim for the first time on direct appeal, the defendant must show that "under prevailing professional norms," *Strickland*, 466 U.S. at 688, no competent attorney would do what trial counsel did or no competent attorney would fail to do what trial counsel failed to do.  *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).  As many cases have noted, the right to counsel does not mean the right to errorless counsel.  *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).[4]

A silent "record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions."  *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).  An appellate "court must not engage in retrospective speculation" as to trial counsel's performance.  *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).

Further, Taylor must show that, had counsel made the objections Taylor now urges, the trial court would have erred to overrule those objections.  *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996) ("in order to argue successfully that . . . trial counsel's failure to object . . . amounted to ineffective assistance, appellant must show that the trial judge would have committed error in overruling such an objection").

## III.    Analysis

Taylor's appeal claims that his trial counsel failed to object to certain testimony at the punishment stage of trial and that counsel, thus, rendered ineffective assistance.  All these

---

[4]The second *Strickland* prong requires a showing that the deficient performance prejudiced the defense to the degree that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different.  *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).  "The appropriate standard for judging prejudice requires an appellant to 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  *Tong*, 25 S.W.3d at 712 (quoting *Strickland*, 466 U.S. at 694).

instances occurred during trial counsel's cross-examination of Arkansas Detective Wade Easley, who described his investigation of the robbery of an Exxon convenience store in Texarkana, Arkansas. Taylor argues the following:

- when Easley described what he had seen in a surveillance video of the Exxon robbery, counsel should have objected that the video itself was the best evidence of that incident;
- when Easley testified that Taylor's family told him what kind of car Taylor drove, counsel should have made a hearsay objection; and
- when Easley testified about a text message conversation between Taylor and his brother, counsel should have challenged those text messages as hearsay.

Yet, Taylor is at a serious disadvantage, as the record is silent about counsel's reasons for what she asked, objected to, and did not object to. In the record before us, there are moments from which trial strategies can be gleaned.[5] As discussed below, we believe Taylor failed to meet the requirements of showing ineffective assistance.

### A.    Easley's Testimony

During the punishment phase of the trial, the State presented evidence that Taylor had committed four other aggravated robberies in Texarkana.[6] Easley described his investigation of an armed robbery of an Exxon convenience store on the Arkansas side of State Line Avenue. Easley told the jury during his investigation that he viewed a surveillance video of the Exxon robbery and recognized Taylor's brother, Lamarcuse Johnson, acting as "basically the lookout

---

[5]For example, counsel got Easley to agree that no fingerprints or DNA linked Taylor to the Exxon robbery and that Taylor was not found in possession of anything from that crime scene. Counsel also introduced photographs of tattoos on Taylor's torso. In the Exxon surveillance video, the robber\gunman was shirtless, and Easley did not recall seeing any tattoos on the suspect's torso.

[6]We take judicial notice that two cities, Texarkana, Texas, and Texarkana, Arkansas, are adjacent cities divided for several miles by State Line Avenue. "The state line between the states of Texas and Arkansas runs through and divides the city of Texarkana." *Payne v. Wynne*, 233 S.W. 609, 610 (Tex. Civ. App. 1921), *aff'd*, *Wynne v. Payne*, 244 S.W. 993 (Tex. Comm'n App. 1922) (describing rail lines and connections between two railway companies).

guy." A second man entered, with his face covered and holding a pistol,[7] and robbed the store. Easley suspected the gunman was Taylor. Easley developed that suspicion because a white Crown Victoria was seen leaving the Exxon robbery scene, and Easley had information that Taylor owned or drove such a car. Easley also had access to text messages between Taylor and Johnson in which they planned to rob a store.[8] At the time of his testimony at Taylor's trial, Easley had an arrest warrant for Taylor for the Exxon robbery.

During the cross-examination of Easley, Taylor's counsel began by describing what she thought was the State's punishment theory linking Taylor to the extraneous robberies described by Easley and other punishment witnesses:

> I've heard testimony -- we're here because allegedly there's an MO,[9] a distinctive MO, of Craig Taylor, and only Craig Taylor, wearing a t-shirt wrapped around his head in a very distinctive fashion where he loops the, you know, the hold, the neck hole, around his eyes like this and, you know, pulls it sort of around his ears to keep it in place, and then wraps the t-shirt around his head. Is that a distinctive MO to Craig Taylor?

Easley responded that he could not answer the question. Counsel then asked Easley why he was so sure Taylor was the masked gunman at the Exxon robbery. In response, Easley

---

[7]Easley also testified that the gun recovered and placed in evidence for the E-Z Mart robbery matched the gun he saw in the Exxon surveillance video.

[8]The texts were not produced at trial, but Easley evidently had them with him on the witness stand. He testified to a text conversation in which Lemarcuse sent a message that stated, "We need to hit some—need to hit some tonight" to the phone number identified as Taylor's. Taylor responded, "lol bet," which Easley translated to mean "laugh out loud yes." Later that night, Lemarcuse texted Taylor, "Green light." The time of that text corresponded to a moment where Lemarcuse was seen in the Exxon surveillance video and appeared to be texting.

[9]Modus operandi.

explained that he had Taylor's phone number from Easley's own investigation into Lemarcuse,[10] that Taylor's phone number led the detective to the text conversation with Lemarcuse about the men planning to rob a store, and that there was a message from Lemarcuse's phone to Taylor's phone that said "Green light" right before the masked gunman entered the Exxon. Easley further testified that Lemarcuse did not seem afraid when the gunman entered. After the robbery, Lemarcuse and the gunman ran out together and were both seen getting "into a white Crown Victoria with black wheels that matche[d] what [Taylor drove]."

B.      **Easley's Testimony about the Surveillance Video of the Exxon Robbery**

As to Easley's testimony about the surveillance video he saw from the Exxon robbery, Taylor claims that (1) the video itself was the best evidence of the robbery and (2) trial counsel should have made an objection based on Rule 1002 to challenge Easley's description of the video's contents. *See* TEX. R. EVID. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or other law provides otherwise."). We note that there is nothing in the record establishing that the video was available at the time of trial. Counsel also may have had reasons not to move for admission of such video, as the jury had seen videos of three other robberies already. Counsel could have thought that the jury seeing Taylor involved in another crime would be prejudicial. With a silent record and the presumption of reasonable representation, we cannot find counsel's performance deficient in this respect.[11]

---

[10]At guilt/innocence, Easley testified he was investigating Lemarcuse for an unspecified offense on the Arkansas side of Texarkana. In that investigation, he acquired Taylor's phone number.

[11]In its brief, the State points to its statement that, at the end of testimony during the punishment phase, it intended to offer videos from each of the extraneous robberies, including the Exxon robbery. But the next day, after the State's last punishment witness testified, the State rested without offering a video of the Exxon robbery.

Taylor has failed to rebut the "strong presumption that counsel's conduct [fell] within the wide range of reasonably professional assistance." *Robertson*, 187 S.W.3d at 482.

### C. Easley's Testimony About the Text Messages

Taylor also alleges that trial counsel was ineffective for failing to raise a hearsay objection as to Easley's testimony about the text messages between Taylor and Lamarcuse. We disagree. In the text conversation, Taylor agreed with his brother that they needed to "hit something," which from the context and Easley's testimony described a robbery. "A statement qualifies as an admission by party opponent if it is offered against a party and it is the party's own statement." *Hughes v. State*, 4 S.W.3d 1, 6 (Tex. Crim App. 1999).[12] Moreover, as our sister court found in a similar situation, "the trial court did not err in admitting appellant's Facebook posts as admissions of a party opponent." *Ripstra v. State*, 514 S.W.3d 305, 315 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

"To demonstrate ineffective assistance of counsel for failure to object to the admission of testimony, appellant must identify the specific objection and prove that it would have been successful." *McNeil v. State*, 452 S.W.3d 408, 417 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (citing *Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002)). But Taylor has failed to show that his suggested objection would have been granted by the trial court. The record is silent on counsel's reasons and presumed strategy. As a result, this complaint fails to meet the *Strickland* standard for deficient performance.

---

[12]*See* TEX. R. EVID. 803(24).

### D.    The White Crown Victoria

Under direct examination by the State in the punishment stage, Easley testified that he learned that "[a] white Crown Victoria with factory wheels" was seen leaving the scene of the Exxon robbery and that Taylor "ha[d] that vehicle."  On cross-examination,[13] counsel engaged in the following discussion with Easley:

> [Taylor's counsel]:  What is it that ties Craig Taylor to a white Crown Victoria?
>
> [Easley]:  His friends told us that's what he drives.
>
> [Taylor's counsel]:  Didn't they also tell --
>
> [Easley]:  His family actually.
>
> [Taylor's counsel]:  Didn't they also tell you that car belonged to somebody else?
>
> [Easley]:  Probably, I don't recall.
>
> [Taylor's counsel]:  Okay.  Did you look for any kind of records or documentation or proof that he drives a white Crown Victoria.
>
> [Easley]:  Other than just what his family told me.
>
> [Taylor's counsel]:  So, your testimony about him driving a white Crown Victoria was just really, I guess, not hearsay per se, but it was what you had been told?
>
> [Easley]:  Yes, it's what we learned in our investigation.

On appeal, Taylor claims that counsel should have raised a hearsay objection to Easley's testimony that Taylor's family told the detective the make and model of Taylor's car.

---

[13]Taylor's appellate counsel also argues that trial counsel's elicitation of the alleged hearsay statement from Easley with her questioning is more evidence of trial counsel's ineffectiveness.  But "the fact that other counsel might have tried the case differently does not show inadequate representation."  *Ex parte Prior*, 540 S.W.2d 723, 727 (Tex. Crim. App. 1976).

9

Here, the record is silent as to counsel's reasoning for failing to object. Arguably, Easley's testimony was admissible to show why his investigation focused on Taylor. *See Ortiz v. State*, 93 S.W.3d 79, 95 (Tex. Crim. App. 2002). Thus, there was at least one arguable theory of admissibility for Easley's testimony about how he connected the car with Taylor. Taylor has also cited no authority that the trial court would have been wrong to overrule a hearsay objection, had one been made.

We also observe that, during the guilt phase of Taylor's trial, a hearsay objection was lodged by defense co-counsel to a similar line of questioning. Texarkana, Texas, Detective Craig Buster was testifying about the investigation of the offense—the E-Z Mart robbery—leading to Taylor's underlying conviction. Buster testified that he consulted Easley, who was investigating Taylor for an Arkansas offense. Buster explained that Easley supplied a phone number for Taylor and that that phone was used to call in a fake robbery, as a distraction, to another part of Texarkana right after the indicted offense was committed. Buster also testified that he reviewed a report from a third officer, which said that the phone number attributed to Taylor "pinged," or was found to have been in the vicinity, of the location across the street from the indicted robbery, near where the backpack with inculpatory evidence had been found. Taylor's co-counsel lodged a hearsay objection to that testimony. The State responded that it was not offering the testimony for the truth of the matter asserted; rather, it was "simply asking where he got the information to further his investigation." The trial court overruled the defense's objection. Based on that ruling earlier in the trial, Taylor's counsel could have thought that, even

10

if she lodged a hearsay objection to the testimony about the Crown Victoria, it would not have been successful. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

Thus, Taylor has not established that trial counsel was deficient in not objecting to Easley's testimony about how he acquired knowledge of the car Taylor drove. Because Taylor has failed to meet *Strickland*'s first prong, we need not address the second prong. As a result, we overrule Taylor's point of error.

## IV.    Conclusion

For these reasons, the trial court's judgment is affirmed.

Scott E. Stevens
Justice

Date Submitted:     April 29, 2021
Date Decided:       July 16, 2021

Do Not Publish