

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. AP–75,964

## EX PARTE SPENCER OJEIFO IMOUDU, Applicant

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS FROM BEXAR COUNTY

**MEYERS, J., delivered the opinion of the Court in which PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined. KELLER, P.J., filed a dissenting opinion.**

### O P I N I O N

Applicant was charged with felony murder and manslaughter. He pled guilty to murder in exchange for a 17-year sentence with an affirmative finding of a deadly weapon. Applicant filed an application for writ of habeas corpus claiming that his plea was involuntary because his trial counsel failed to investigate and advise him of the availability of an insanity defense. The trial court entered findings of fact and conclusions of law recommending that relief be denied. We filed and set this application

for writ of habeas corpus to consider whether counsel was ineffective for failing to investigate whether Applicant was insane at the time of the offense. We hold that Applicant was prejudiced by counsel's error. Relief is granted.

**FACTS**

In August of 2005, Applicant stole a car from outside a pawn shop. The owner of the car was inside the pawn shop at the time, and he and another witness got into the witness's truck and pursued Applicant. During the chase, Applicant drove into oncoming traffic and hit another car, killing the driver. Applicant was arrested and charged with felony murder and manslaughter. Applicant was initially represented by court-appointed counsel.

When Applicant's father visited the jail, he found that Applicant was not himself. A social worker who worked with the mentally ill patients in the detention center informed Mr. Imoudu that she had noticed Applicant's deteriorating mental health. The social worker attempted to contact Applicant's court-appointed attorney, but he had not returned any of her calls. She suggested to Mr. Imoudu that he hire another attorney to represent his son. Acting on her suggestion, in March of 2006, Applicant's family retained counsel to represent him, and his court-appointed attorney was dismissed. When the newly hired attorney first met with him, Applicant "stared into space, struck an odd pose with his fingers on his chin, mumbled, and was incoherent." Co-counsel met with Applicant and also felt that there was "something wrong" with him. As a result of their

separate meetings with Applicant, the attorneys filed a motion for a competency examination. The court-appointed psychiatrist evaluated Applicant and concluded that he was competent. Applicant testified at the competency hearing and was coherent, alert, and aware of the proceedings.[1] After Applicant's testimony at the hearing, his attorney conceded that Applicant was competent to stand trial. A month later, Applicant accepted the State's plea agreement and pled guilty to murder in exchange for a 17-year sentence.

## HABEAS

Applicant filed this application for writ of habeas corpus claiming that his guilty plea was involuntary as a result of counsel's failure to investigate whether he was insane at the time of the offense and failure to inform him of the availability of an insanity defense. A psychiatrist who was hired by habeas counsel to review Applicant's medical records concluded that Applicant had a chronic mental illness, probably schizophrenia, and was likely insane at the time of the offense. Habeas counsel argues that if Applicant's trial attorneys had obtained the medical records and hired a psychiatrist to review them, there is a reasonable probability that he or she also would have determined that Applicant was insane at the time of the offense. And, if Applicant and his family had known of the possibility of an insanity defense, then Applicant would have rejected the plea offer and gone to trial.

While there is nothing indicating that Applicant ever received mental-health

---

[1]At the time of the hearing, Applicant had already been prescribed anti-psychotic medications.

treatment when he was not in jail, the medical records from the jail are extensive. The records indicate that Applicant had received mental-health treatment within the six months prior to this offense, when he was arrested in January of 2005 for misdemeanor theft. While in jail for the misdemeanor, Applicant was prescribed the anti-psychotic medication Stelazine, which is often used to treat schizophrenia. That case was dismissed, and he was released after over a month in jail. Six months later, Applicant was arrested for the current offense. The medical records dated after this arrest show numerous referrals to the mental-health services of the jail and several requests for psychiatric evaluations, which eventually resulted in Applicant being moved to the area of the jail used to house the mentally ill inmates. While there, he was determined to be "significant for mental illness" and prescribed the medications Haldol and Depakote for a possible diagnosis of schizophrenia.

Applicant's attorneys did not request these records from the jail. Their only consideration of Applicant's mental health was to review the report of the psychiatrist who evaluated his competency to stand trial.

After reviewing the application for writ of habeas corpus, the trial court entered 36 pages of findings of fact and conclusions of law and recommended that the application be denied.[2] The trial court was "not convinced that the failure to further investigate and

---

[2]While the findings of fact and conclusions of law are indeed quite thorough, some of them indicate a misreading of the record. Specifically, the trial court concluded, in both the findings of fact and the conclusions of law, that schizophrenia was ruled out as a diagnosis due to the notation "R/O Schizophrenia" in Applicant's medical records from the jail. However, "R/O"

pursue the insanity defense, the failure to hire another psychiatrist to evaluate Applicant, and the failure to advise Applicant to reject the plea bargain, go to trial, and plead insanity as a defense, was representation that fell below an objective standard of reasonableness."[3]

## CASELAW

In order to prevail on a claim of ineffective assistance of counsel, Applicant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). First, he must show that counsel's performance was deficient. However, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, Applicant must show that he was prejudiced by counsel's deficient performance. To demonstrate prejudice, Applicant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In *Hill v. Lockhart*, the Supreme Court held that the *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. 474 U.S. 52, 58, 106 S.Ct. 366 (1985). In the context of a guilty plea, a defendant satisfies the prejudice requirement by showing that he would not have pleaded guilty and would have insisted on

---

is the medical abbreviation for "rule out." Thus, "R/O schizophrenia" actually means that the observer suspects that the patient may have schizophrenia and the patient should be evaluated in order to rule out the diagnosis.

[3] We note that the cases cited by the trial court in support of the conclusion that counsel were not ineffective for failing to obtain an examination of Applicant or to further investigate an insanity defense were cases in which the attorneys at least investigated the defendant's medical history and made an educated decision to not pursue an insanity defense.

going to trial. *Id*. at 59. The Court noted that "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id*.

## ANALYSIS

In his affidavit, one of Applicant's attorneys stated that he received a letter from Applicant: "Much of it was gibberish. However, he wrote that he was 'attending programs for illness' and taking various prescription medications." This led the attorneys to request a competency examination, but they never investigated whether he was insane at the time of the offense, did not review his jail medical records or speak to any of the jail personnel who had contact with him after his arrest, did not request an insanity evaluation or hire a psychiatrist to evaluate Applicant's mental condition at the time of the offense, and did not advise him of the insanity defense.

Given Applicant's odd behavior when the attorneys met him, the concerns expressed to the attorneys by his family, and the fact that the attorneys were retained on the advice of the social worker who had observed Applicant's decline in mental-health, Applicant's attorneys should have been alerted that his mental health at the time of the offense may have been in question and thus, they should have looked into past medical records from the jail. Applicant's other attorney filed an affidavit stating, "I explained the [plea] offer to [Applicant] and his family and recommended that he accept it due to my

concerns about how [Applicant] would act and what he might say during the punishment hearing in any attempt at mitigation." If the attorney was so concerned about Applicant's bizarre behavior that he recommended that Applicant accept the State's plea offer, he should have considered that the bizarre behavior could indicate that Applicant may have been insane at the time of the offense–at least enough to have looked into it. *See Strickland*, 466 U.S. at 691 (counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary).

Thus, we feel that counsel had a duty to investigate the possibility that Applicant was insane at the time of the offense given the likelihood of mental illness noted in reports from jail medical personnel. Instead, counsel failed to even obtain Applicant's medical records. If they had, it would have been clear from even a cursory reading of the documents that Applicant was suffering from some mental problems while he was incarcerated. This leads us to conclude that counsel was ineffective for failing to investigate whether Applicant was insane at the time of the offense.

We next turn to whether Applicant was prejudiced by counsel's error. Applicant claims that, but for counsel's errors, he would not have pled guilty and instead would have gone to trial and pled not guilty by reason of insanity. In his affidavit, Applicant states: "The lawyers did not discuss an insanity defense with me. Had they hired a psychiatrist to evaluate me, the psychiatrist concluded that I was insane at the time of the offense, and the lawyers explained the insanity defense to me, I would have rejected the

plea bargain, pled not guilty by reason of insanity, and gone to trial." Applicant's father also filed an affidavit claiming that "[t]he lawyers did not advise me of the insanity defense or request funds to hire a psychiatrist to determine whether [Applicant] was insane at the time of the offense. I would have provided funds upon request. Had a psychiatrist concluded that [Applicant] was insane at the time of the offense, and the lawyers advised me of the insanity defense, I would have encouraged [Applicant] to plead not guilty by reason of insanity and go to trial." Thus, Applicant has shown a reasonable probability that counsel's ineffective assistance affected the outcome of the plea process.

Under *Hill*, part of this analysis necessarily includes a consideration of whether the insanity defense would have been validly raised and likely to succeed at trial. 474 U.S. at 59. In this case, the psychiatrist hired by habeas counsel reviewed Applicant's medical records and determined that Applicant was actively schizophrenic at the time of the offense and that the nature of the schizophrenic process includes the inability at any given moment to discern right from wrong. He stated in his affidavit:

> Given the likelihood that [Applicant] was psychotic and paranoid when he stole the car, his psychosis and paranoia probably were exacerbated during the chase, causing him to believe that someone was trying to kill him. Therefore, it is my opinion, based on reasonable medical probability, that [Applicant] was suffering from untreated schizophrenia, was unable to discern right from wrong, and was insane at the time of the offense on August 1, 2005.

Had Applicant gone to trial, such testimony by a psychiatrist may have raised a

reasonable doubt in the mind of the trier of fact.[4] This satisfies *Strickland*'s prejudice requirement. 466 U.S. at 695.

## CONCLUSION

We conclude that counsel erred in failing to investigate Applicant's sanity at the time of the offense. Additionally, Applicant has shown that there is a reasonable probability that if his attorneys had informed him of the possibility of pursuing an insanity defense, he would not have pled guilty and would have gone to trial. Therefore, Applicant was prejudiced by counsel's error and he is entitled to relief.

Meyers, J.

Delivered: June 3, 2009

Publish

---

[4]We are not called upon here to decide if Applicant actually was insane at the time of the offense. Our concern is simply that, due to counsel's failure to investigate Applicant's medical history, Applicant was not able to make an educated decision regarding whether to proceed to trial and raise an insanity defense. We acknowledge that the 17-year sentence Applicant received was favorable in light of the fact that he was charged with murder, for which he could have been sentenced to 5 to 99 years or life, and with manslaughter, for which he could have received 2 to 20 years. However, a lenient sentence does not indicate a lack of prejudice.