Nicholas Edward AYERS, Appellant

v.

The STATE of Texas, Appellee

No. 06–15–00156–CR

Court of Appeals of Texas,
Texarkana.

Submitted: December 23, 2015

Decided: January 14, 2016

James P. Finstrom, Attorney at Law, Jefferson, TX, for appellant.

Angela Rene Smoak, Marion County & District Attorney, Jefferson, TX, for appellee.

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Moseley

Pursuant to a plea agreement, Nicholas Edward Ayers pled guilty to indecency with a child by sexual contact. Under Ayers' plea agreement, the trial court deferred a finding of guilt to consider the possibility of community supervision. During a subsequent hearing during which the trial court considered whether to place Ayers on deferred adjudication community supervision, Ayers and the State each requested the trial court to review a letter that Ayers had written to the trial court and which had been filed with the clerk. The trial court complied with this request and, after the hearing on punishment, Ayers was convicted of indecency with a child by sexual contact and was sentenced to eighteen years' imprisonment.

On appeal,[1] Ayers contends that because the letter was not formally admitted into evidence at the punishment hearing, the State argued outside of the evidence in referencing the letter during closing argument. Ayers also argues that his counsel rendered ineffective assistance in failing to object to the State's closing argument. We find that Ayers has failed to preserve his first issue on appeal. We further find that Ayers cannot demonstrate that his counsel rendered ineffective assistance. Accordingly, we affirm the trial court's judgment.

---

1. In a companion case filed under our cause number 06–15–00157–CR, Ayers also appeals from another conviction of indecency with a child by sexual contact.

## I. Factual and Procedural Background

### A. Ayers Writes to the Trial Court

During the pendency of the case, Ayers wrote a lengthy letter to the trial court in which he discussed his unfortunate childhood and his history of poor life choices. In the letter, Ayers stated that during his childhood, he had no significant relationship with his father due to his father's addiction to drugs and alcohol, the "U.S. Marshalls [sic] came and took" or arrested the father-figure who was then present in his life, he had been sexually abused, he had few friends throughout his life, and he had attempted to impress the few friends that he did have by stealing cigarettes and alcohol to enjoy with them. Ayers' letter continued to say that he "became addicted to porn and masturbation," as a child, that his relationship with his mother deteriorated, that he was bullied in school, and that he "began looking for intimacy" at a time when "[g]irls were intimidating" to him. Ayers stated that when a childhood relationship ended badly, "[he] grew angrier with life and God, withdrew from those that loved [him], and allowed sin to fester in [his] conscience." Ayers continued, "I was no longer an innocent child. I was fixated on 'grown up love' and was disappointed time and time again." Ayers claimed that he "was a child that just wanted help understanding [him]self and life."

Ayers stated that he became addicted to drugs and left home as a teenager. Despite these hardships, Ayers excelled academically. Ayers cited even the mother of the prosecuting attorney as one of the teachers who he said had believed in him. She paid for him to visit the Rochester Institute of Technology, which he attended. Ayers claimed that while in college, his "porn addiction went haywire" and that he began ingesting cough medicine, amphetamine pills, ecstasy, Xanax, salvia, and laughing gas, all to his detriment. Ayers eventually dropped out of college and moved back to Texas, where he continued his substance abuse and began to use crack cocaine.

Ayers explained that he was under the influence of substances when he committed the acts alleged in the State's indictment and averred that he meant no harm by his actions. He wrote,

> I am not defending or advocating my actions. I'm only stating that I had no malicious or predatorial [sic] intentions, and I have been praying constantly for an unbiased, fair, and merciful judge to be over my case. . . . I now pray that you will see that I am not a threat or a menace, and that while I have made many mistakes in life, I have served more than thirteen months in jail, having had plenty of time to sober up and see my mistakes as they are and learn from them.

Ayers then described the steps he would take to straighten out his life if the trial court decided to place him on deferred adjudication community supervision. Attached to Ayers' letter were the letters of several character witnesses.

### B. Ayers Invites the Trial Court to Consider the Letter Referenced in the State's Closing

At trial, both Ayers and the State asked the trial court to review this letter, along with the attached letters from several witnesses. After the State rested, Ayers' counsel stated, "Your Honor, after consulting with my client, he does not wish to testify at the punishment phase today. He would like the letter that he wrote to the Court to stand. I would ask the Court to read that."

During closing argument, the State referenced the letter in which Ayers admitted

that he had "an addiction with pornography," pointed out that Ayers "never sa[id] he's sorry" in the letter, and argued that "[h]e tells the Court that he didn't see a reaction from the children, so it must be okay." The State also noted, "He tells us that he has all of these people who believe in him.... He even mentions my very own mother in his letter to this Court." Ayers complains that these statements were objectionable.

## II. Ayers Has Not Preserved His First Point of Error

██ In his first issue on appeal, Ayers argues that the State committed fundamental error in exceeding the bounds of permissible jury argument by referencing the letter, which was not formally admitted as an exhibit. In claiming that the State's argument constituted fundamental error, Ayers seeks to obviate the need to have preserved the error at trial through an objection. We find that Ayers was required to object to the State's closing argument in order to preserve this issue for our review.

██ "All but the most fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong[,]" including many constitutional rights. *Marin v. State*, 851 S.W.2d 275, 279 (Tex.Crim.App.1993), *modified on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997). The fundamental error doctrine does not save Ayers from the preservation of error requirement in Rule 33.1 of the Texas Rules of Appellate Procedure. *See* TEX.R.APP. P. 33.1. This Court has previously explained that "[i]n order to preserve any error from improper jury argument, a party must object to the argument and pursue the objection until the trial court rules adversely." *George v. State*, 117 S.W.3d 285, 289 (Tex. App.–Texarkana 2003, pet. ref'd) (citing

*Valencia v. State*, 946 S.W.2d 81, 81 (Tex. Crim.App.1997); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App.1996)); *see Mays v. State*, 318 S.W.3d 368, 394 (Tex. Crim.App.2010); *Threadgill v. State*, 146 S.W.3d 654, 670 (Tex.Crim.App.2004).

Because Ayers failed to preserve his first point of error for our review, we overrule it.

## III. Counsel Did Not Render Ineffective Assistance in Failing to Object to the State's Closing Arguments

██ In his last point of error, Ayers argues that his counsel rendered ineffective assistance in failing to object to the State's closing argument. "In order to prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-pronged test set forth in *Strickland v. Washington.*" *Lampkin v. State*, 470 S.W.3d 876, 896 (Tex.App.–Texarkana 2015, pet. filed) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex.Crim. App.2009)).

██ "The first prong requires a showing that counsel's performance fell below an objective standard of reasonableness." *Id.* at 896–97 (citing *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052). "This requirement can be difficult to meet since there is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* at 897 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). "The second *Strickland* prong, sometimes referred to as 'the prejudice prong,' requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). "A failure to make a showing under either prong defeats a

claim for ineffective assistance." *Id.* (citing *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex.Crim.App.2003)).

 The Texas Court of Criminal Appeals has explained that "[t]rial counsel 'should ordinarily be afforded an opportunity to explain his actions' before being denounced as ineffective." *Menefield v. State*, 363 S.W.3d 591, 593 (Tex.Crim.App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App.2005)). Where, as here, an appellate record is silent as to why trial counsel failed to take certain actions, the appellant has "failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable." *Mata v. State*, 226 S.W.3d 425, 431 (Tex.Crim.App.2007); *see Thompson v. State*, 9 S.W.3d 808, 814 (Tex.Crim.App.1999).

In the absence of a record showing counsel's reasoning, we can fathom strategic reasons why counsel would have elected not to object to the State's closing argument. It must be assumed that the State's case was relatively strong because Ayers entered a plea of guilty and has not pointed out any weaknesses in the evidence against him. Ayers wrote the letter, which was addressed to the trial court. The record is clear that Ayers wanted the trial court to review his letter and consider its contents in rendering its decision. In that letter, Ayers wrote, in an effort to mitigate punishment, of his bad childhood, the sexual abuse that he suffered at the hands of others, and his long-term struggle with pornography and substance abuse. Ayers' trial strategy was to admit his faults and wrongdoings and place himself at the mercy of the trial court. He attempted to show the trial court that he had the potential to straighten his life out, that he was academically gifted, and that he was ready to reform. By asking the trial court to read the letter, Ayers was able to have the trial court consider his position without having to testify or subject himself to the State's cross-examination. Being able to present his argument without subjecting himself to the perils of cross-examination appears to be sound trial strategy. It is one that Ayers apparently endorsed fully; otherwise, he would never have written the letter. Of course, when Ayers elected to adopt that dog, he adopted its fleas as well—the State pointed out the omissions and faults contained in that self-serving letter. The general tenor of Ayers' letter was to elicit sympathy while exhibiting an air of candor; there is simply no way to determine how many skeletons that the State would have been able to withdraw from Ayers' closet had Ayers taken the stand and been subjected to cross-examination.

Since we "can conceive potential reasonable trial strategies that counsel could have been pursuing," we "simply cannot conclude that counsel has performed deficiently." *Andrews v. State*, 159 S.W.3d 98, 103 (Tex.Crim.App.2005). Consequently, given the strong presumption here that counsel's conduct fell within the wide range of reasonable, professional assistance, we find that the first *Strickland* prong has not been met. We overrule Ayers' last point of error.

## IV. Conclusion

We affirm the trial court's judgment.