

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-23-00040-CR

---

KAMORION LAMAR MEACHEM, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 21F1516-005

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

## MEMORANDUM OPINION

A Bowie County jury found Kamorion Lamar Meachem guilty of the murder of Grant Smith[1] and assessed his sentence at twenty-five years' imprisonment and a $5,000.00 fine. The trial court imposed the assessed sentence, and Meachem appeals. In his sole point of error, Meachem maintains that he received ineffective assistance of counsel at trial because counsel failed to obtain a ruling on a pretrial motion, thereby forcing him to waive the argument on appeal. Upon review of the record, we find that Meachem failed to meet the requirements of *Strickland v. Washington*[2] and, therefore, cannot show that he received ineffective assistance of counsel. As a result, we affirm the trial court's judgment.

## I.     Background

At trial, Meachem explained that, before the day of the shooting, he had not known Smith very well and had never had any kind of conflict with Smith. Yet, on the day of the shooting, Meachem was involved in a verbal altercation with Smith in the school's lunchroom. According to Meachem, the conflict began over a juice box that Smith had thrown in a waste basket.[3] Meachem walked over to Smith and asked why he had thrown the juice in the trash. Shortly after that, "the name calling started." Then Smith's brother got involved, "and that's when [Meachem] backed off." However, Meachem said that Smith approached him a second time and

---

[1]In accordance with Rule 9.10(a)(3), we refer to the victim and any individual who might have been a minor at the time the offense was committed by pseudonyms. *See* TEX. R. APP. P. 9.10(a)(3).

[2]*Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).

[3]Meachem conceded that the juice box had originally belonged to Smith but stated that a female student had taken it away from Smith and given it to Meachem.

began calling him names. At that point, the principal intervened and sent both Smith and Meachem to their respective homes.

Meachem said that he was mad about the altercation that took place in the lunchroom, and he was also angry about being suspended from school. Meachem's older sister, Kate, retrieved him from school and gave him a ride home. After speaking to his mother about what happened in the lunchroom, Meachem told his brother that he had nearly gotten into a fight at school.

Not long after that, multiple texting conversations ensued.

Some of those messages were between Meachem and Misty Hawkins. Hawkins was a former girlfriend of Meachem's. Hawkins testified about their text exchange that day and authenticated screenshots taken from Meachem's phone as accurately depicting their text conversation. Hawkins testified that, although she and Meachem were no longer dating at the time of trial, she would "have his back no matter what." During their exchange, Meachem said that he had his "Glock" and his brother, so as far as Meachem was concerned, Smith could "pull up" on Meachem because Smith would "die trying."

There were also messages directly between Meachem and Smith, including an "invitation" by Meachem for Smith to come to his home so they could fight.

When Smith arrived at Meachem's house, Meachem immediately notified his brother, Kenneth. According to Meachem, he looked out a window that faces the street and "saw three males standing in front of a white SUV, but [he saw] one of them walking like -- he was kind of leaving [their] driveway behind [his] mother['s] car." That is when Meachem stepped outside

3

and took "like, three steps down towards the carport." The first person Meachem saw was Smith, who was standing behind Meachem's mother's car. Smith's brother and another individual were standing behind Smith. Meachem said one of the individuals caught his attention by "[t]he way he had his hands in his pants." Meachem believed he was armed with a gun because "he proceeded to show [Meachem] the handle and a clip of the gun." Shortly after that, Meachem went back inside the house to inform Kenneth that one of the individuals outside had a gun.

As Meachem and Kenneth started to go back outside, Kate walked out of the house, told Smith and the others to leave, and stated that she was going to contact the police. Meachem said that there were more people outside by then and that it had caught him "off guard." According to Meachem, by that time, there was "a lot of arguing that's going on." He testified, "I mean, really everybody's engaged in the arguments." At some point, Kenneth and an individual named Edward began to argue. By that time, Kenneth had gained possession of a gun. Meachem said that Kenneth "racked the gun back," and "as a result of that, a live round came out." According to Meachem, the other group of individuals did not change their demeanor, and their impassive responses caught both Meachem and Kenneth off guard. It was then that Kenneth put the gun down on the ground. Meachem explained,

> That's when the guns were put down, my brother had proceeded to step back towards the road, and that's when [Smith] and [Jake] and [Edward], they all stepped up at the same time. When [Jake] and [Smith]'s little brother, I'm not sure his name -- . Well, they all are, like, trying to step up, and that's when my brother hit [Smith]. And then when we hit [Smith], my sister tried to step in and like tried to stop them. And then [Smith] . . . hit my sister, and him and my brother started fighting.

4

Meachem claimed that Kenneth felt threatened, stating "[A]ll three of them tried to step up at the same time towards me. Because while he was setting the gun down, I was actually there by myself still mouthing off." According to Meachem, there were four individuals fighting his brother at the same time, one of them being Smith. Kate was hit a second time, still trying to break up the fight. By then, another female entered the fight and began pulling Kate's hair. Meachem said he was in shock and was afraid that his brother would get hurt. Meachem retrieved the gun and "went immediately back to the action." When he returned, Meachem waved the gun, yelled at everyone, and told them to stop. Only one person stepped back after Meachem told everyone to stop fighting. Meachem testified that, even after the others recognized that he had a gun, they continued fighting. According to Meachem, "that's when [he] proceeded to fire." "[T]hat's when everything basically stopped." But, even after everything "stopped," Meachem said he was unaware that he had shot Smith. He said he realized it "a couple seconds after that -- after the gunshot. After [he saw] him." Meachem went back inside the house and waited for the police to arrive. Meachem said that he "felt sad" and that he "never wanted to shoot anybody." He continued, "I didn't want to hurt him. I just wanted to fight. I didn't think we was going to escalate to that situation."

Before Meachem's testimony, the jury heard from several witnesses on behalf of the State. In addition to Meachem, two other individuals testified on his behalf. All of their testimonies were similar to Meachem's testimony, but differed in some ways that are not pertinent to the issue before us. After hearing from those witnesses, the jury found Meachem

5

guilty of murder, and he was sentenced to twenty-five years' imprisonment. This appeal followed.

## II.     Standard of Review

As many cases have noted, the right to counsel does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "[T]o prevail on a claim of ineffective assistance of counsel, [the defendant] must satisfy the two-pronged test set forth in *Strickland*." *Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009) (orig. proceeding) (citing *Strickland*, 466 U.S. at 691–92). The first prong requires a showing that counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This requirement can be difficult to meet since there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "This measure of deference, however, must not be watered down into a disguised form of acquiescence." *Profitt v. Waldron*, 831 F.2d 1245, 1248 (5th Cir. 1987) (finding ineffective assistance where counsel failed to request medical records and relied on court-mandated competency examination when he knew client had escaped from mental institution).

The second *Strickland* prong, often called "the prejudice prong," requires a showing that, but for counsel's unprofessional error, "there is a reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id.* Thus, to establish prejudice, an applicant must show "that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result was reliable." *Id.* at 687. It is not sufficient for

6

applicant to show "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, he must show that "there is a reasonable probability that, absent the errors, the fact[-]finder would have had a reasonable doubt respecting guilt." *Id.* at 695.

The applicant has the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Allegations of ineffectiveness must be based on the record, and the presumption of a sound trial strategy "cannot be overcome absent evidence in the record of the attorney's reasons for his conduct." *Busby v. State*, 990 S.W.2d 263, 268–69 (Tex. Crim. App. 1999). The reviewing court must look to the totality of the representation, and its decision must be based on the facts of the particular case, viewed at the time of counsel's conduct so as to eliminate hindsight bias. *Strickland*, 466 U.S. at 690. In all cases, the "ultimate focus of inquiry must be on the fundamental fairness of the proceeding." *Id.* at 696; *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (orig. proceeding).

A failure to make a showing under either prong defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Allegations of ineffectiveness "must 'be firmly founded in the record.'" *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002) (quoting *Thompson*, 9 S.W.3d at 813). The *Strickland* test "of necessity requires a case-by-case examination of the evidence." *Williams v. Taylor*, 529 U.S. 362, 382 (2000) (quoting *Wright v. West*, 505 U.S. 277, 308 (1992) (Kennedy, J., concurring in judgment)).

When a claim of ineffective assistance of counsel is raised for the first time on direct appeal, the record "is in almost all cases inadequate to show that counsel's conduct fell below an

7

objectively reasonable standard of performance." *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). Even so, "when no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she did." *Id.* Moreover, where the reviewing court "can conceive potential reasonable trial strategies that counsel could have been pursuing," the court "simply cannot conclude that counsel has performed deficiently." *Id.* at 103. Essentially, when a party raises an ineffective assistance of counsel claim for the first time on direct appeal, the defendant must show that, "under prevailing professional norms," *Strickland*, 466 U.S. at 690, no competent attorney would do what trial counsel did or no competent attorney would fail to do what trial counsel failed to do, *Andrews*, 159 S.W.3d at 102.

## III. Discussion

Meachem argues that his trial counsel was ineffective because he failed to seek a ruling on an omnibus pretrial motion. In that motion, Meachem made over twenty requests to the trial court, including, but not limited to, the following:

1.    that he be arraigned outside the presence of the jury;

2.    that he receive a witnesses list from the State in regard to its case-in-chief and rebuttal;

3.    that the trial court conduct a hearing outside the presence of the jury to determine admissibility of any physical evidence recovered during the investigation and that the State intended to offer;

4.    that the State disclose any exculpatory, mitigation, or impeachment evidence;

5.    that the State produce, before trial, any laboratory reports or expert opinions;

8

6. that he receive a hearing outside the presence of the jury regarding any extraneous-offense evidence that the State intended to offer into evidence;

(7) that the State provide him with witness statements;

8. that he receive notice from the State if it intended to offer certified documents into evidence;

9. that he receive notice from the State of any prior bad acts or unadjudicated offenses against him that it intended to offer into evidence;

10. that the trial court give him leave to file additional motions, if necessary; and

11. that the trial court appoint an investigator and an expert to assist in the preparation of his defense.[4]

Of the items in the pretrial motion, Meachem points to one—the request for an investigator—as being "most especially likely" to produce a different result. According to Meachem, "Given the number of persons at the scene of the incident and the chaos which ensued, and [sic] investigator would have been able to gather information which Counsel was not able to acquire otherwise."

The first step in our analysis is to identify the information available to trial counsel that would trigger trial counsel's duty to seek a ruling on Meachem's request for a court-appointed investigator. As we discussed above, Meachem does not claim that the State failed to disclose any item of evidentiary value. Consequently, we presume that Meachem had access to every witness statement, photograph, physical item, audio recording, video recording, and digital

---

[4]The majority of the requests contained in Meachem's motion related to the State's actions before and during trial. Yet, Meachem does not claim that the State failed in any of its duties during the pretrial process or that it failed to abide by any procedural or substantive rule of law during trial. Likewise, he does not complain on appeal about the court's evidentiary rulings during trial. Accordingly, Meachem cannot now claim that his trial counsel was ineffective for failing to pursue those portions of the motion with which he seemingly had no issues during trial. *See Strickland*, 466 U.S. at 694.

recording that was in the State's possession. Meachem does not contend that his attorney had failed to investigate the case. Nor does Meachem contend that his attorney was ill-prepared for trial on the known facts of the case. Instead, Meachem argues that an investigator, if hired, would have developed other facts: "An investigator could have located other witnesses who *might* have shed some unbiased light on the situation." (Emphasis added). He continues, "Several spoke of a truck pulling a trailer which drove by almost at the instant of the shooting. *Apparently*, no attempt was made to locate the occupants of the truck."[5] (Emphasis added). Yet, Meachem fails to show what type of information that the truck's occupants may have had or how their purported testimony would have favored Meachem's defense.[6] He merely asserts that the witness might have had some information that could have been useful in some unspecified way.

Meachem's state of mind, though, was the focus of the trial. By his own admission, Meachem was the shooter. The trial came down to whether the jury believed Meachem's protestations that, when he shot Smith, he did not intend to cause serious bodily injury. Meachem, in a text conversation with his former girlfriend, said that he had a pistol and that Smith would die if Smith came after him. Meachem does not specify how, if at all, having an investigator would have impacted the state-of-mind inquiry.

As a part of trial counsel's duty to personally investigate his client's case, he is required to seek assistance with an investigation when he believes it is necessary. Here, the record does not indicate why trial counsel chose not to pursue Meachem's request for a court-appointed

---

[5]Before an appellate court finds that a trial attorney's performance was ineffective, the appellant must provide facts to support that accusation, and not an assumption that a fact did, or did not, occur.

[6]*Strickland*, 466 U.S. at 694.

investigator.[7]  Quite possibly, counsel believed that his own personal investigation obviated the need for one and that, therefore, the trial court would have likely denied the request.

Absent any explanation for trial counsel's decision, Meachem has failed to overcome the presumption that the challenged actions were sound strategy, and his ineffective assistance of counsel claim fails.[8]

We overrule Meachem's sole point of error.

## IV.    Conclusion

We affirm the judgment of the trial court.

Jeff Rambin
Justice

Date Submitted:      August 31, 2023
Date Decided:        August 31, 2023

Do Not Publish

---

[7]Meachem filed a motion for a new trial, but an ineffective assistance of counsel claim was not included in that motion.

[8]Because we find that Meachem's trial counsel was not ineffective, there is no necessity to address the second prong of *Strickland*, which is the prejudice analysis.  That said, Meachem has wholly failed to show that "there is a reasonable probability that . . . the result of the proceeding would have been different" had his trial counsel pursued his motion. *See Strickland*, 466 U.S. at 694.

11