

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00046-CR

EVERICK L. MONK, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 21F1529-202

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

# MEMORANDUM OPINION

A Bowie County jury convicted Everick L. Monk of aggravated sexual assault of Mary Brown,[1] a disabled individual, and burglary of her habitation with the intent to commit sexual assault. *See* TEX. PENAL CODE ANN. §§ 22.021, 30.02(d). After the jury found the State's habitual, punishment-enhancement allegations true, it assessed a sentence of life imprisonment for both convictions. On appeal, Monk argues that the State's references to extraneous offenses constituted prosecutorial misconduct and that his counsel rendered ineffective assistance for failing to object to the comments.

We find (1) that the majority of Monk's complaints of prosecutorial misconduct are meritless, (2) that he failed to preserve his remaining prosecutorial misconduct complaint by failing to object at trial, and (3) that Monk is unable to show he was prejudiced by any ineffective assistance of counsel during the guilt/innocence phase of his trial. As a result, we affirm the trial court's judgment.

## I. The Majority of Monk's Prosecutorial Misconduct Complaints are Meritless

Monk argues that the State's introduction of an extraneous offense during guilt/innocence amounted to prosecutorial misconduct. Because the trial court expressly permitted the State to introduce the extraneous offense, we find Monk's complaint meritless.

### A. Factual and Procedural Background

Before trial, Monk filed a motion in limine seeking to prevent any suggestion or inference that he was previously arrested, jailed, or had "committed other crimes similar to the

---

[1]Mary Brown is the State's assigned pseudonym for the victim.

offense on trial."[2]  At a pretrial hearing, the State informed the trial court that it planned to introduce extraneous-offense evidence and sought a ruling on its admissibility.

The State explained that a few minutes after Brown called the police, Monk was pulled over by police officers after a citizen "called 911 to report an intoxicated driver."  The dispatcher obtained the license plate of Monk's vehicle from the citizen, ran "the license plate through TCIC/NCIC[,] and s[aw] that Monk had been convicted out of the state of Arkansas for a very similar offense, specifically that Monk ha[d] been convicted of sexually assaulting a 74-year-old woman."[3]  The State argued that the dispatcher knew officers were "already out on the sexual assault call," determined that the events were "awfully close together for [the] incident[s] not to be related," and relayed that information to the traffic sergeant who pulled Monk over.  As a result, the State argued that "[t]he police department developed Mr. Monk as a suspect by virtue of his status as a registered sex offender" and argued that "[t]here [was] no way to present th[e] case to the jury in a manner that would not be confusing without that information."  The State continued, "Otherwise, it literally looks like [police] just see a car driving down the road and pull it over, and I don't think that's fair to the State."

In response to the State's argument seeking to introduce extraneous-offense evidence, Monk objected on the ground that it was "overly prejudicial for any probative value" and argued that admission of the evidence would "den[y] due process to the defendant" because the jury would "determine his innocence or guilt based upon his reputation alone."  The trial court

[2]During voir dire, the panel was questioned on Monk's defensive issue of voluntary intoxication, which was submitted to the jury.

[3]The evidence showed that Brown turned sixty years old on the day of trial, had epilepsy, suffered a stroke, and had seizures daily.  She received government assistance due to her disability.

overruled Monk's objection and granted him a running objection to the extraneous-offense evidence.

At trial, Meagan McBain Terry testified that she was the dispatcher who received Brown's 9-1-1 call. The call came in at 2:35 a.m. Brown was struggling to speak. The first words she got out were, "Someone help me. . . . He just raped me." Terry stayed on the line with Brown until officers arrived. The call lasted approximately eight minutes or until roughly 2:43 a.m.

Avel Perez, a patrol officer with the Texarkana, Texas Police Department (TTPD), was dispatched to Brown's home and testified about her injuries. During his cross-examination, Monk established that the only description given by Brown was that the perpetrator was a black male who wore a white shirt and may have been named "Eric."

Michael Ashford, another dispatcher, testified that he received a call about a possible drunk driver at 2:39 a.m. (i.e., four minutes after the start of Brown's call, but while Brown was still on the line with Terry). While on his call, Ashford was able to see information about Terry's call, including the call notes and the location where officers had been sent. Within thirty seconds, (1) Ashford was able to check the license-plate number given by his caller, (2) determine that the vehicle was registered to Monk, (3) determine that Monk was a registered sex offender, and (4) further determine that the reported location of Monk's vehicle was within a mile and a half of Brown's home. Ashford testified that, from the sex-offender-registry information, he concluded that Monk had previously been convicted for "close to the same crime" that Brown reported to Terry. Ashford quickly relayed what he had learned.

4

Cole Bredenberg, another TTPD officer, testified, "Sergeant Hargrave gets on the radio and says that he believed he spotted a vehicle that was matching a description of a possible intoxicated driver with other information involving Mr. Monk." The State clarified, "This morning, Judge Tidwell has ruled that information can come in, in front of the jury, as part of how you-all developed Monk as a suspect," and asked, "So what information did the police department act on whenever Everick Monk was pulled over and detained . . . ?" Bredenberg answered that dispatch advised that Monk "had been arrested prior for a nearly identical crime." During Bredenberg's cross-examination, Monk insinuated that, just because "the driver was possibly a sex offender," "everybody just jumped and said, that must be our guy?" Counsel elicited testimony from Bredenberg that he had not seen "any direct evidence that Mr. Monk had even touched [Brown]."

During Ashford's cross-examination, Ashford also agreed that nothing directly linked Monk to Brown. In its rebuttal, the State established that "the defendant had been convicted in the state of Arkansas for sexually assaulting a 74-year-old woman," prompting Monk to suggest that the prior conviction occurred in the 1980s. In its final re-direct, the State established that "Monk was convicted in 1993 in Pulaski County, Arkansas, and was given 40 years to do in prison."

**B.    Analysis**

In his first point of error, Monk argues that the State's references to his prior sexual assault constituted prosecutorial misconduct. We disagree.

5

"Allegations of prosecutorial misconduct are reviewed on a case-by-case basis." *Woods v. State*, 398 S.W.3d 396, 404 n.12 (Tex. App.—Texarkana 2013, pet. ref'd) (citing *Stahl v. State*, 749 S.W.2d 826, 830 (Tex. Crim. App. 1988)). Prosecutorial misconduct may require reversal where (1) the prosecutor deliberately violated an express court order, (2) the prosecutor committed blatant misconduct to the degree that it could be considered contumacious or willfully disobedient to authority, or (3) the prosecutor took action that is so clearly calculated to inflame the minds of the jury that an instruction to disregard cannot cure the harm. *See Stahl*, 749 S.W.2d at 831. The State's actions here fit none of these categories.

In this case, the State obtained the trial court's express permission to elicit evidence about Monk's prior sexual-assault offense during trial. Its theory of admissibility focused on caselaw, permitting extraneous-offense evidence as context to explain the circumstances surrounding the charged offense and why investigators focused on Monk as a suspect. *See Devoe v. State*, 354 S.W.3d 457, 469–71 (Tex. Crim. App. 2011); *Fowler v. State*, 553 S.W.3d 576, 583 (Tex. App.—Texarkana 2018, no pet.). Monk does not challenge the propriety of the trial court's ruling. Because the State obtained the trial court's permission to question witnesses about Monk's prior, extraneous, sexual-assault offense, we find meritless Monk's prosecutorial misconduct claim related to the admission of this evidence.

## II.     Monk Failed to Preserve His Remaining Prosecutorial-Misconduct Complaint

Next, we address one comment by the State that injected extraneous-offense evidence not allowed by the trial court's pretrial ruling—the comment that Monk committed the current

offense while on "parole for another felony offense." We find that Monk failed to preserve error on this complaint.[4]

"As a prerequisite to presenting a complaint for appellate review, the record must show that" it "was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling . . . with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a). Further, "[t]o preserve a prosecutorial misconduct complaint, a defendant must generally make a timely and specific objection, request an instruction to disregard the matter improperly placed before the jury, and move for a mistrial." *Johnson v. State*, 432 S.W.3d 552, 561 (Tex. App.— Texarkana 2014, pet. ref'd) (citing *Penry v. State*, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995) (per curiam)).

Because Monk failed to object at trial to the State's comment about parole for another felony offense, his complaint is not preserved for our review. We overrule all of Monk's appellate complaints about prosecutorial misconduct.

---

[4]"[S]erious and continuing prosecutorial misconduct that undermines the reliability of the fact[-]finding process" and results in "deprivation of fundamental fairness and due process of law" may entitle a defendant to a new trial even if "few objections have been perfected." *Johnson*, 432 S.W.3d at 561 (second alteration in original) (quoting *Rogers v. State*, 725 S.W.2d 350, 359–60 (Tex. App.—Houston [1st Dist.] 1987, no pet.)); *see Jimenez v. State*, 298 S.W.3d 203, 214 (Tex. App.—San Antonio 2009, pet. ref'd). Monk believed that the State's comments about his prior sexual assault, in addition to the comment about parole and another felony offense, amounted to serious continuing prosecutorial misconduct. As explained above, we found most of Monk's complaints meritless. To the extent that Monk's brief can be read to argue that the State's single comment about parole for another felony offense constituted fundamental error, we disagree that that comment "was the sort of flagrant repeated misconduct at issue in *Rogers* such that it deprived [Monk] of fundamental fairness or due process of law." *Johnson*, 432 S.W.3d at 562; *see Clark v. State*, 365 S.W.3d 333, 338 (Tex. Crim. App. 2012) ("Prosecutorial misconduct rises to a due-process violation when it is so significant that it deprives a defendant of a fair trial." (citing *Greer v. Miller*, 483 U.S. 756, 765 (1987))).

**III.    Monk Cannot Show Prejudice Due to Ineffective Assistance**

In his second point of error, Monk argues that his counsel rendered ineffective assistance by failing to object to the State's remark that he "was on parole for another felony offense when he committed" the offense at issue in this case.[5]   Here, even assuming ineffective assistance, Monk cannot show that he was prejudiced by counsel's failure to object to the State's remark.[6]

**A.    Standard of Review**

"To prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-pronged test set forth in *Strickland. v. Washington*, 466 U.S. 668, 687–88 . . . (1984)." *Auld v. State*, 652 S.W.3d 95, 112 (Tex. App.—Texarkana 2022, no pet.) (citing *Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009) (orig. proceeding)).   "A failure to make a showing under either prong defeats a claim for ineffective assistance." *Id.* (citing *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003)).   "As many cases have noted, the right to counsel does not mean the right to errorless counsel." *Id.* (quoting *Lampkin v. State*, 470 S.W.3d 876, 896 (Tex. App.—Texarkana 2015, pet. ref'd) (citing *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006))).

The first prong requires a showing "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.   "The second *Strickland* prong, sometimes referred to as 'the prejudice prong,' requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would

---

[5]Because the record shows that Monk objected to the State's introduction of the extraneous sexual-assault evidence and obtained a running objection, we find meritless Monk's complaint of ineffective assistance related to the prior sexual assault.

[6]We do not condone the State's remark by our rulings.

have been different." *Auld*, 652 S.W.3d at 112; *see Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005); *Strickland*, 466 U.S. at 694. "'A reasonable probability' is defined as 'a probability sufficient to undermine confidence in the outcome.'" *Auld*, 652 S.W.3d at 112 (quoting *Andrews*, 158 S.W.3d at 102). As a result, to show prejudice, "an applicant must show 'that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result was reliable.'" *Id.* (quoting *Ex parte Martinez,* 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (orig. proceeding) (quoting *Strickland*, 466 U.S. at 687)). Because "[i]t is not sufficient for [an] Applicant to show 'that the errors had some conceivable effect on the outcome of the proceeding[,] . . . [he] must show that 'there is a reasonable probability that, absent the errors, the fact-finder would have had a reasonable doubt respecting guilt.'" *Id.* at 112–13 (citation omitted) (third alteration in original) (quoting *Ex parte Martinez*, 330 S.W.3d at 901 (quoting *Strickland*, 466 U.S. at 693, 695)).

**B.    Analysis**

Here, we find that failing to object to the State's remark had no effect on the question of whether Monk committed either the burglary or Brown's sexual assault.

The evidence of Monk's guilt was strong. Brown testified that someone had broken into her home, raped her while holding a knife, and "beat [her] unconscious." At trial, Brown identified Monk as the perpetrator. Brown had also undergone a sexual assault nurse examination, and evidence obtained during the examination was sent for DNA testing, along with a DNA specimen obtained from a penile swab of Monk. Chelsy Wingate, a "DNA section supervisor" for the Texas Department of Public Safety Crime Laboratory in Garland, Texas,

9

testified that her analysis of the evidence revealed "that the mixture profile that was obtained [was] more likely from the victim and the suspect than the suspect and an unknown individual" and that "[t]he probability of obtaining this mixture profile if the DNA came from the suspect and the victim [was] 25.9 septillion times greater than the probability of obtaining this profile if the DNA came from the suspect and one unrelated, unknown individual."

In addition to Brown's testimony and the results of DNA testing, Monk's testimony at trial also implicated him in the crime by placing him at the crime scene. Monk said that he knew Brown and went to her house on the night of the incident. He claimed that he left, smoked crack cocaine, and did not remember the rest of the night. Because Monk decided to testify, evidence of his prior offenses was admitted before the jury during the State's cross-examination.

Also, the trial court's charge redirected the jury to the question of whether Monk had committed the offenses alleged by the indictment and instructed the jury as follows:

> You have heard evidence that the defendant may have committed offenses other than the offense charged in this case. You are instructed that this evidence was admitted to prove, if it does, motive, intent, identity, and state of mind of the defendant and for no other reason. You are instructed that you may not consider this evidence unless you first find beyond a reasonable doubt that the defendant committed the extraneous offenses, and if you make that finding then you may only consider the evidence for the purpose of establishing motive, intent, identity, and state of mind of the defendant.
>
> . . . .
>
> All persons are presumed to be innocent, and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with the offense gives rise to no inference of guilt at his trial.

In light of the strong evidence of guilt, Monk's prior offenses admitted as a result of his decision to testify, and the trial court's charge limiting the purpose for which extraneous offenses could be considered, we do not find that there was a reasonable probability that the outcome of the guilt/innocence trial would have been different had counsel objected to the State's comment that Monk was "on parole for another felony offense when he committed" the offense at issue in this case.

Because we find that Monk cannot meet the second *Strickland* prong, we overrule his last point of error.

## IV.    Disposition

We affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted:     December 5, 2023
Date Decided:       January 4, 2024

Do Not Publish