

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00103-CR

JOSHUA LEVI BENOIT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Red River County, Texas
Trial Court No. CR03083

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

A Red River County jury convicted Joshua Levi Benoit of aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02 (Supp.). After Benoit pled true to the State's punishment-enhancement allegation, he was sentenced to fifty years' imprisonment. On appeal, Benoit, who testified in his defense, argues that his trial counsel rendered ineffective assistance by failing to object to the State's use of hearsay statements from Benoit's medical records during his cross-examination. Because we find that Benoit's counsel was not ineffective, we affirm the trial court's judgment.

## I. Factual Background

The State alleged that Benoit committed aggravated assault with a deadly weapon when he intentionally, knowingly, or recklessly caused bodily injury to Robert McCulley by cutting him with a sword. Evidence at trial showed that Benoit and McCulley smoked methamphetamine together before the incident. McCulley and his girlfriend, Briana McKinley, testified that Benoit, while carrying a samurai sword, accused McCulley of stealing his methamphetamine. Both McCulley and McKinley testified that Benoit cut McCulley with the sword in the shoulder and chest. McCulley said he reached for the sword, which cut his hands. After McCulley was cut, McKinley testified, Benoit reached for alcohol, "pour[ed] it all over himself feeling guilty for what he had done, for slicing up McCulley," and "lit himself on fire."

In his defense, Benoit claimed that McCulley reached for the sword during an argument and that the two "fought over it." According to Benoit, McCulley lost control of the sword and ran into another room. Benoit followed, with sword in hand. Benoit admitted to cutting

2

McCulley with the sword, but only after McCulley "charged" at him. Benoit also testified that McCulley poured the alcohol and lit Benoit on fire.

To rebut Benoit's claim that McCulley was the aggressor and to establish that Benoit had lit himself on fire, the State elicited the following during cross-examination, which forms the basis of Benoit's complaint on appeal:

> Q. [BY THE STATE]: LifeNet, they saw you that day. . . . [P]atient has approximately 50 percent second and third degree burns, patient states he poured rubbing alcohol on himself and set himself on fire after an altercation with a friend.
>
> A. I never said that.
>
> . . . .
>
> Q. Upon assessment[,] patient state[d] he had rubbing alcohol because he had a cut on his hand. He reported he lit a cigarette and caught fire. That's the story you told them?
>
> A. No, it's not.
>
> Q. You didn't tell anything about anybody throwing alcohol on you and catching you on fire?
>
> A. I didn't tell them anything.
>
> . . . .
>
> Q. Another report: patient stated that he accidentally lit himself on fire due to spilling alcohol on himself and when he tried to clean his hands[,] then lighting a cigarette, also in the text of methamphetamine use. . . . They got that wrong too, except the methamphetamine use?
>
> A. I never said that.
>
> . . . .
>
> Q. . . . . Says there are numerous reports of the etiology of his burns

3

including a meth lab explosion versus self-immolation after altercation involving a samurai sword from -- it says from the sister.  I guess your sister told them that.

    A.     I'm assuming so.

    . . . .

    Q.     And per patient, he remembers trying to get a container of alcohol wash from above his refrigerator and he intended to use on the cut to his hand for sanitation which accidentally spilled on him, then with the residue still on him he lit a cigarette and caught himself on fire . . . .

    A.     No.

After hearing the evidence, the jury rejected Benoit's account of the incident and convicted him of aggravated assault with a deadly weapon.

## II.    Benoit's Counsel Was Not Ineffective

In his sole point of error, Benoit argues that his "counsel rendered ineffective assistance by failing to object to the State's use of hearsay statements from records *not* admitted into evidence during the State's cross-examination of [Benoit]."  (Emphasis added).  Because the record established that the State was reading from records admitted into evidence without objection, no ineffective assistance is shown.

### A.    Standard of Review

As many cases have noted, the right to counsel does not mean the right to errorless counsel.  *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).  "[T]o prevail on a claim of ineffective assistance of counsel, [the defendant] must satisfy the two-prong[ed] test set forth in *Strickland v. Washington*, 466 U.S. 668, [687–88] (1984)."  *Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009) (orig. proceeding).  A failure to make a showing under

4

either prong of the *Strickland* test defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).

To prove ineffective assistance of his counsel, Benoit must show that (1) trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms, and (2) there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *See Strickland*, 466 U.S. at 687–95; *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986). A "reasonable probability" means a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### B.      Benoit Cannot Meet the First *Strickland* Prong

Under the first *Strickland* prong, the defendant "must prove, by a preponderance of the evidence, that there is . . . no plausible professional reason for a specific act or omission." *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). We note that judicial scrutiny of counsel's performance must be highly deferential, and "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). We apply a strong presumption that trial counsel was competent and presume that counsel's actions and decisions were reasonably professional and motivated by sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Also, when an appellate record is silent on why trial counsel failed to take certain actions, "the appellant has failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable." *Mata v. State*,

5

226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *see Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

Here, the record is silent as to why counsel did not object. Even so, the record shows that Benoit's medical records and LifeNet records were admitted into evidence without objection. As a result, we find that counsel did not object to the State's cross-examination because it referred directly to hospital and LifeNet records that were already admitted into evidence. In other words, counsel likely reasoned that any hearsay objection would have been too late since the alleged hearsay was already before the jury without objection.

Consequently, we cannot find Benoit's counsel ineffective on this silent record and conclude that Benoit has failed to meet the first *Strickland* prong. We overrule Benoit's sole point of error.

## IV.     Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:     December 11, 2023
Date Decided:     January 26, 2024

Do Not Publish

6